**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 24, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DENNIS R. COWAN,

          Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

          Defendant-Appellee.

No. 07-6236
(D.C. No. 5:06-CV-01383-C)
(W.D. Okla.)

---

**ORDER**

---

Before **McCONNELL, ANDERSON** and **BRORBY**, Circuit Judges.

---

The Commissioner of Social Security has filed a "Motion to Publish" asking that

the court's unpublished Order and Judgment entered in this appeal on June 17, 2008 be

designated for publication. The plaintiff-appellant filed a "Response to Defendant-

Appellee's Motion to Publish" objecting to the motion.

Being duly advised, the "Motion to Publish" is granted. The court now recalls the

mandate issued on August 11, 2008. The court's previously issued Order and Judgment

has been revised to a slightly different format but is otherwise substantively unchanged.

The newly-revised opinion of the court shall be re-issued and is now designated "for

publication." The clerk shall also re-issue the mandate contemporaneously with the

court's opinion.

Entered for the Court
ELISABETH A. SHUMAKER
Clerk of Court

by:
Douglas E. Cressler
Chief Deputy Clerk

2

FILED
United States Court of Appeals
Tenth Circuit

PUBLISH

December 24, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

DENNIS R. COWAN,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,[*]

      Defendant-Appellee.

No. 07-6236

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:06-cv-01383-C)**

Submitted on the briefs:[**]

Jennifer Struble, Robert E. Applegate, Perrine, McGivern, Redemann, Reid, Berry &
Taylor, P.L.L.C., Tulsa, Oklahoma, for Plaintiff-Appellant.

John C. Richter, United States Attorney, Tina M. Waddell, Regional Chief Counsel,
Virginia Watson Keyes, Special Assistant United States Attorney, Office of the General
Counsel, Region VI, Social Security Administration, Dallas, Texas, for Defendant-
Appellee.

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for Jo Anne
B. Barnhart as appellee in this action.

[**]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered
submitted without oral argument.

Before **McCONNELL**, **ANDERSON**, and **BRORBY**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Dennis Cowan appeals the decision of the district court affirming the denial by an Administrative Law Judge (ALJ) of his application for social security disability insurance benefits. We determine the decision of the ALJ was supported by substantial evidence and the law was properly applied. Therefore, exercising our jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

I

Mr. Cowan was born in 1952, has a high school education, and has relevant past work experience as an electrician's helper. He alleges disability beginning September 16, 2003, due to status post-cerebrovascular attack (CVA), chronic obstructive pulmonary disease (COPD), and a severe mental impairment of depression or anxiety resulting from his CVA. Mr. Cowan's initial application for disability insurance benefits and the accompanying disability report did not claim a mental impairment and was denied on February 20, 2004. The denial stated that Mr. Cowan was claiming disability due to "stroke, 3 heart attacks, emphysema and asthma." Aplt. App., Tab 4 at 29. Mr. Cowan requested reconsideration, and his application was reconsidered and again denied on May 28, 2004. The denial following reconsideration reflected that Mr. Cowan was at that

point claiming disability due to "stroke, 3 heart attacks, emphysema, asthma, *and depression*." *Id.* at 34 (emphasis added). Mr. Cowan requested a hearing before an ALJ.

Following the February 28, 2006, hearing, the ALJ found that Mr. Cowan's CVA and COPD qualified as severe impairments at step two of the five-step sequential evaluation process. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (describing five-step process). The ALJ found that Mr. Cowan did not have a severe mental impairment. At step three, the ALJ found that Mr. Cowan's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found that Mr. Cowan had the residual functional capacity (RFC) to perform light work. As to limitations, the ALJ found that Mr. Cowan could only occasionally climb, balance, stoop, kneel, crouch, and crawl. The ALJ also found that Mr. Cowan "should avoid concentrated exposure to dusts, fumes, odors, gases, etc." Aplt. App., Tab 4 at 20 (bolding omitted). Based upon this RFC, the ALJ found at step four that Mr. Cowan could not perform his past relevant work as an electrician's helper. Nevertheless, the ALJ found that Mr. Cowan was not disabled because jobs existed in significant numbers in the national economy that he could do, given his RFC, age, education, and work experience.

The Appeals Council denied Mr. Cowan's subsequent request for review, making the ALJ's decision the final decision of the Commissioner. *Jensen v. Barnhart*, 436 F.3d 1163, 1164 (10th Cir. 2005). The district court affirmed the Commissioner's denial of benefits, and Mr. Cowan filed his notice of appeal to this court. On appeal, Mr. Cowan raises three main points: (1) that the ALJ erred by failing to find that Mr. Cowan suffered

from a severe mental impairment, (2) that the ALJ erred by formulating an RFC

determination that failed to include all of Mr. Cowan's limitations, and (3) that the ALJ

failed to conduct a proper credibility determination. We shall address these points in

order.

## II

First we examine the applicable legal framework.

> We review the Commissioner's decision to determine whether the
> factual findings are supported by substantial evidence in the record and
> whether the correct legal standards were applied. Substantial evidence is
> such relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion. It requires more than a scintilla, but less than a
> preponderance. We consider whether the ALJ followed the specific rules of
> law that must be followed in weighing particular types of evidence in
> disability cases, but we will not reweigh the evidence or substitute our
> judgment for the Commissioner's.

> The possibility of drawing two inconsistent conclusions from the
> evidence does not prevent an administrative agency's findings from being
> supported by substantial evidence. We may not displace the agency's
> choice between two fairly conflicting views, even though the court would
> justifiably have made a different choice had the matter been before it de
> novo.

*Lax*, 489 F.3d at 1084 (citations, quotations, and brackets omitted).

Further,

> In this context, "disability" requires both an inability to engage in
> any substantial gainful activity and a physical or mental impairment, which
> provides reason for the inability. The impairment must be a medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months.

-4-

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (citation, quotations, and ellipsis omitted).

III

Mr. Cowan argues in his first point of error that the ALJ erred in failing to find that he had a severe mental impairment at step two. The ALJ found:

> The evidence does not support the claimant has a severe mental impairment. He alleges residuals due to a CVA. There is no evidence of decreased memory or concentration. The claimant has a slight slurring of words as noted during a consultative exam. Although he reported special education classes in school, he actually described remedial classes in reading, arithmetic, and spelling and worked as an electrician until his CVA. He complained of feeling sad, tearful and not sleeping well. He was prescribed Lexapro for anxiety and depression by his treating physician, Michael Gietzen, D.O. A mental status form completed by Dr. Gietzen reported no limitations due to a mental impairment.

Aplt. App., Tab 4 at 19. The ALJ, consistent with a Psychiatric Review Technique (PRT) form in the record, went on to find that Mr. Cowan had "mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining[] concentration or pace, and no episodes of decompensation," and that his "activities of daily living are restricted due to his physical problems rather than a mental condition." *Id*. at 20.

Mr. Cowan's argument as to his first point essentially has two subpoints: (1) that the ALJ erred in not presenting sufficient analysis for review in finding that he had not met his burden of showing that he had a severe mental impairment, *see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (holding that the claimant has the burden of showing "at

-5-

step two that he has a medically severe impairment or combination of impairments"); and (2) that even if he had not presented sufficient evidence to show a medically severe mental impairment, the ALJ violated her duty to properly develop the administrative record to obtain such evidence.

## A

In his first subpoint, Mr. Cowan argues that the ALJ failed to provide reasoning sufficient to enable meaningful review of her step-two determination regarding Mr. Cowan's mental impairment. We disagree.

As we have often said, while the showing a claimant must make at step two is de minimis, a showing of the mere presence of a condition is not sufficient. *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003). Here, the ALJ concluded that Mr. Cowan did not meet his burden, setting forth the evidence from the record relevant to Mr. Cowan's depression.

The decision referenced the October 30, 2003, mental status examination performed by Dr. Mike Gietzen. The examination form records no abnormalities, and Dr. Gietzen's treatment notes reflect that it was a "normal mental status exam," stating that the doctor "filled the form out for him for SSI disability purposes." Aplt. App., Tab 4 at 109.

As pointed out by Mr. Cowan, approximately six months later, Dr. Gietzen's treatment note for April 26, 2004, reads:

> The patient is here to evaluate with his wife. He states he is not sleeping well. He is depressed. He is in the process of filing for disability. He does not feel well. He feels sad. He is tearful. He is not suicidal or homicidal. He has not been on any antidepressive medications in the past. We discussed the benefits and alternatives of medication for depression. At this point, he would like to start something.

*Id.* at 148. Dr. Gietzen prescribed an anti-depressant for Mr. Cowan with instructions to re-visit Dr. Gietzen in three to four weeks for reevaluation of his condition. The ALJ specifically referenced this record as well.

The ALJ's decision also specifically referenced that she had reviewed Exhibits 7F, 9F, and 10F of the administrative record which contained the assessments of the State agency medical consultants and that she generally concurred with those assessments.

Her step two determination regarding Mr. Cowan's mental limitation bears this out in that it tracks some of the findings of Exhibit 9F, a PRT form completed by a consultant on May 24, 2004, four days prior to the denial of Mr. Cowan's application upon reconsideration. This PRT form considered the medically determinable mental impairments of depression not otherwise specified, and anxiety not otherwise specified, apparently based solely upon Dr. Gietzen's April 26, 2004, treatment note and the prescribed anti-depressant. The consultant determined that Mr. Cowan's mental impairment was not severe, resulting only in a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. *Id.* at 151, 161. The consultant's notes section of the PRT form described Dr. Gietzen's April

-7-

26, 2004, medical record, referenced the fact that Mr. Cowan had alleged special education despite working steadily prior to his stroke, and found that Mr. Cowan's "ADLs are restricted by physical problems." *Id*. at 163.

Thus, it is apparent that the record evidence shows only that Mr. Cowan was prescribed an anti-depressant at one point because he was not sleeping well and had been sad and tearful. The ALJ therefore, followed the lead of the State agency medical consultant who found, following a review of the record, that Mr. Cowan's mental impairment was not severe. There is no evidence that conflicts with this medical finding.

While the ALJ's decision does not reference the hearing testimony with regard to Mr. Cowan's mental impairment, the testimony does not conflict with the ALJ's determination. Mr. Cowan did not testify to any depression at the hearing before the ALJ. His attorney instead relied on his wife to provide such testimony. She testified that it appeared to her that Mr. Cowan was depressed and "gripey," *id.* at 264; that she thought it bothered him not being able to provide for his family; and that he had been taking a half-tablet of his anti-depressant a day but had been forced to discontinue doing so, evidently because it caused problems with his sleeping. None of this testimony conflicts with the consultant's and the ALJ's determinations that Mr. Cowan's mental impairment resulted only in a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace,

and no repeated episodes of decompensation.[1]  Consequently, we cannot say that the ALJ

erred when she found that the evidence in the record "d[id] not support [a conclusion that]

the claimant ha[d] a severe mental impairment."  *Id.* at 19.

B

Mr. Cowan also alleges that the ALJ failed in her duty to properly develop the

record concerning Mr. Cowan's mental impairment and, if needed, order a consultative

examination to supplement the record.

> The ALJ has a basic obligation in every social security case to ensure
> that an adequate record is developed during the disability hearing consistent
> with the issues raised.  This is true despite the presence of counsel, although
> the duty is heightened when the claimant is unrepresented.  The duty is one
> of inquiry, ensuring that the ALJ is informed about facts relevant to his
> decision and learns the claimant's own version of those facts.

*Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)

(citations, quotations, and brackets omitted).  Further, under 20 C.F.R. § 404.1512(e),

"[w]hen the evidence [the agency] receive[s] from [a claimant's] treating physician or

psychologist or other medical source is inadequate for [the agency] to determine whether

[the claimant is] disabled, [the agency] will need additional information to reach a

determination or a decision."

---

[1]    Mr. Cowan also briefly suggests that the ALJ failed to set forth specific, legitimate reasons for rejecting Dr. Gietzen's medical opinion regarding Mr. Cowan's mental impairment.  Dr. Gietzen's opinion was not rejected.  The only "opinion" set forth in the April 26, 2004, medical record, was that Mr. Cowan had alleged sufficient symptoms for the doctor to be comfortable writing a prescription.  The ALJ acknowledged that Mr. Cowan had a medically determinable impairment, she simply found that it was not a severe impairment.

-9-

Here, there was no need to further develop the record because sufficient information existed for the ALJ to make her disability determination. There was record evidence regarding Mr. Cowan's daily activities and physical abilities; there was Exhibit 9F, the PRT form in which the medical consultant had found that Mr. Cowan's mental impairment had resulted in only a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation; and there was no evidence, medical or otherwise, suggesting that his mental impairment had any greater effect on Mr. Cowan's ability to work.

Further, Mr. Cowan was represented by counsel at the hearing before the ALJ, and we held in *Hawkins v. Chater* that:

> when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. *See Glass v. Shalala*, 43 F.3d 1392, 1394-96 (10th Cir. 1994) (refusing to remand for further development of the record where the ALJ had carefully explored the applicant's claims and where counsel representing claimant failed to specify the additional information sought).

113 F.3d 1162, 1167-68 (10th Cir. 1997); *see also Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (same). Here, there was no request from Mr. Cowan's counsel for any

-10-

other existing medical records to be obtained, for a consultative mental examination to be performed, or for any other development of the record to be undertaken.[2]

## IV

In his second point on appeal, Mr. Cowan argues that "[t]he ALJ erred at step 4 of the five step sequential process by failing to formulate [an RFC] assessment that included all of [Mr.] Cowan's limitations." Aplt. Opening Br. at 15. As noted above, the ALJ found that Mr. Cowan could perform light work and could "occasionally climb, balance, stoop, kneel, crouch, and crawl," but "should avoid concentrated exposure to dusts, fumes, odors, gases, etc." Aplt. App., Tab 4 at 20 (bolding omitted).

Like his first point, Mr. Cowan's second point also has two main subpoints: (1) that the ALJ failed to give proper weight to Dr. Gietzen's medical opinion, and (2) that the ALJ did not properly address medical records showing that Mr. Cowan had weakness on his left side.

## A

Mr. Cowan argues that the ALJ did not give specific and legitimate reasons for not giving Dr. Gietzen's medical opinion controlling weight. On an insurance form dated September 30, 2003, Dr. Gietzen wrote in the space labeled "PROGNOSIS/REMARKS": "[Mr. Cowan] had a stroke and I feel he may never return to work." *Id.* at 106.

---

[2]     At the end of the hearing, Mr. Cowan's attorney first responded negatively when asked by the ALJ if he had anything else to present, and then responded positively when he was asked "[h]ave we covered everything?" Aplt. App., Tab 4 at 272.

As to Dr. Gietzen's statement, the ALJ stated: "This statement was based on treating the claimant on two occasions in September 2003. The opinion of Dr. Gietzen is not entitled to controlling weight because it is inconsistent with the other evidence of record, including his own treatment records." *Id*. at 22. The ALJ then referenced a treatment record from September 16, 2003, the day after Mr. Cowan experience his "mini stroke," *id*. at 110, in which Dr. Gietzen noted that Mr. Cowan was "nearly totally asymptomatic," *id*. at 22, 110.

"When an ALJ rejects a treating physician's opinion, he must articulate specific, legitimate reasons for his decision." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (quotation omitted). Mr. Cowan argues that the specific legitimate reasons that the ALJ articulated are invalid because they are based on misrepresentations of the record. He first argues that "[t]he record contains medical records from Dr. Gietzen dating back to 1998." Aplt. Opening Br. at 16. Second, he argues that the opinion was not inconsistent with Dr. Gietzen's other medical records. He directs our attention to an office note dated February 24, 2004, in which Dr. Gietzen recorded that he had a discussion with Mr. Cowan regarding providing him with a work release form. Dr. Gietzen wrote: "I told him that I would give him a work release if he wanted one, but would not guarantee that he would not have any recurrent symptoms, and that is what [h]is current work had wanted. I told him that at this point we could not make the determination." Aplt. App., Tab 4 at 149.

First, Dr. Gietzen's brief statement on the medical form was not a true medical opinion. It did not contain Dr. Gietzen's judgment about the nature and severity of Mr. Cowan's physical limitations, or any information about what activities Mr. Cowan could still perform. *See* 20 C.F.R. § 404.1527(a)(2). It merely stated that the doctor did not know if Mr. Cowan would be able to return to work, which is an issue reserved to the Commissioner. *Id*. § 404.1527(e). Even taken on its face, it is not clear if the doctor was simply saying that Mr. Cowan would not be able to return to his *past* work, which would be consistent with the ALJ's determination, or that he would not be able to return to *any* work.

Second, we do not believe the ALJ misrepresented the record. Although Dr. Gietzen had treated Mr. Cowan for a number of years, the stroke in question that Dr. Gietzen was referring to in his comment on the September 30, 2003, insurance form, occurred on September 15, 2003, and Dr. Gietzen had referred to Mr. Cowan as "nearly totally asymptomatic," Aplt. App., Tab 4 at 110, when he examined him the day after the stroke. Further, as for the February 24, 2004, record, it was not, as described by Mr. Cowan in his brief, a warning "against returning to work." Aplt. Opening Br. at 16. It simply said that what Mr. Cowan's current employer wanted was a guarantee that no symptoms from the stroke would recur, and that Dr. Gietzen could not provide such a guarantee at that point, although he would be willing to give a work release. There was no discussion of the severity of Mr. Cowan's current symptoms, nor was there any prognosis regarding future condition.

-13-

B

Mr. Cowan also argues in his second point that the ALJ failed to consider that portions of the record showed that Mr. Cowan suffered from left-arm weakness following his stroke and that the formulated RFC should have included a limitation to account for the left-arm weakness.[3]

The ALJ was clearly aware of Mr. Cowan's left-arm weakness. And the medical records fairly uniformly reference Mr. Cowan's left-arm weakness. A consultative exam performed by Dr. Beau Jennings on January 20, 2003, found in regard to Mr. Cowan's upper extremities:

> He has good grip strength on the right side. His grip strength on the left side is about half that of the right. All ranges of motion in his upper extremities including both shoulders are full. There is no joint redness, tenderness, or swelling. The deep tendon reflexes are good. Pulses are equal and good.

Aplt. App., Tab 4 at 117. A State agency consultant completed a physical RFC assessment, noted therein that Mr. Cowan's left-hand strength was half of his right but that he had full use of his left hand and arm, and determined that Mr. Cowan could occasionally lift and/or carry twenty pounds, could frequently lift and/or carry ten pounds, had unlimited ability to push or pull, and had no manipulative limitations. Mr. Cowan

---

[3]  Mr. Cowan refers to left-*sided* weakness but the medical evidence shows that his main difficulty was with his left arm. During Mr. Cowan's hearing testimony regarding his limitations, he mentioned only that after the stroke he had lost strength in his left arm. And, while there is medical evidence that the left side of his face was "mildly flattened," and that he at times slurred his speech, Aplt. App., Tab 4 at 117, 145, there was no medical evidence showing his left leg was weaker than his right.

-14-

and his wife both testified that the heaviest thing he lifted around the house was a gallon of milk. Mr. Cowan testified that if he lifted anything heavier he was worn out, and Mrs. Cowan testified that if he lifted anything heavier he lost his grip and that he dropped things four or five times a day. There was no record, however, that Mr. Cowan had ever undergone treatment for his left-arm weakness.

In her decision, the ALJ referenced the medical records showing left-arm weakness and found that Mr. Cowan had a "slight resultant left sided arm weakness" and "a weakened left hand grip" but noted that "his right hand is his dominant hand." *Id*. at 22. She determined that he had the RFC to perform light work, which is consistent with the State agency consultant's assessment. *See* 20 C.F.R. § 404.1567(b).

We disagree that we must reverse due to the fact that the ALJ's RFC formulation failed to include further limitations to account for Mr. Cowan's left-arm weakness. An ALJ's RFC formulation must be supported by substantial evidence which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotation omitted). The ALJ specifically recognized Mr. Cowan's left-arm weakness but also that he could manipulate small objects and effectively grasp tools. And she based her RFC analysis on the State agency consultant's RFC assessment, which itself specifically referenced the consultative examination's findings that Mr. Cowan's left-arm strength was half that of his right.

In his third point on appeal, Mr. Cowan argues that the ALJ's analysis of Mr. Cowan's credibility was not supported by substantial evidence. Mr. Cowan testified at the hearing that he could not work: "[b]ecause I get stressed out. I lose my breath a lot. When I had my stroke, I don't have my strength in my left arm." Aplt. App., Tab 4 at 259. The ALJ found that Mr. Cowan's "allegation of significant limitations in the ability to perform basic work activities is not credible to the extent alleged." *Id.* at 21.

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston* [*v. Bowen*], 838 F.2d [1125,] 1133 [(10th Cir. 1988)] (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams* [*ex rel.*] *Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability").

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

Mr. Cowan's brief first attacks the ALJ's determination that "[t]he objective medical evidence does not support [a finding that] the claimant has residuals as a result of his cerebrovascular attack," Aplt. Opening Br. at 19-20, on the ground that the medical evidence regarding Mr. Cowan's left-arm weakness provides evidence of such residuals, *id.* at 20. As the ALJ specifically found that Mr. Cowan had left-arm weakness and

decreased grip strength in his left hand, it seems clear that she meant only that the medical evidence did not support Mr. Cowan's claim that he had *disabling* residuals.

Mr. Cowan also complains about the ALJ's acknowledgment of the fact that Mr. Cowan had been diagnosed with COPD but was still smoking a pack of cigarettes a day at the time of the hearing, despite numerous notations in the record regarding the efforts of various medical professionals to get Mr. Cowan to quit.[4] Mr. Cowan claims without citation to authority that the ALJ "unfairly discount[ed] the credibility of at least claimant['s] breathing complaints based upon the premise that he should have been able to stop smoking." *Id.*

First, under 20 C.F.R. § 404.1530, "[i]n order to get benefits, [a claimant] must follow treatment prescribed by [his or her] physician if this treatment can restore [the claimant's] ability to work" and failure to do so, without a good reason, will result in the denial of benefits. The Commissioner directs us to *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000), for the contention that respiratory problems that are amenable to treatment do not support a disability finding, and that the failure to stop smoking, when that is the prescribed treatment, is grounds for denying benefits. But we need not base our decision on a determination that denial was proper due to Mr. Cowan's failure to follow a prescribed treatment. The ALJ also found Mr. Cowan's testimony that he was unable to work due to breathing problems to be not entirely credible because the record

---

[4] For example, a medical record from Dr. Gietzen dated January 19, 2001, noted "[p]atient advised strongly to quit smoking again. Patient has no desire at this point." Aplt. App., Tab 4 at 183.

did not indicate a worsening of Mr. Cowan's COPD or cardiac problems and that his COPD was shown as stable in January 2001.  The ALJ found that Mr. Cowan "previously worked with these impairments, which suggests these conditions would not currently prevent work."  Aplt. App., Tab 4 at 21.  Mr. Cowan does not challenge these findings on appeal which show that the ALJ affirmatively linked her credibility determination to substantial evidence in the record.

VI

The judgment of the district court is AFFIRMED.

-18-