FILED
United States Court of Appeals
Tenth Circuit

August 6, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DAVID BARRETT,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 08-2300
(D.C. No. 2:07-CV-01285-CG)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

David Barrett appeals from a district court order[1] affirming the

Commissioner's decision to deny his application for Social Security disability

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]    The parties consented to proceed before a United States Magistrate Judge in this matter.

benefits. We have jurisdiction over this appeal under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

### *Background*

Mr. Barrett applied for Social Security disability benefits, claiming that a congenital, degenerative hip condition interfered with his ability to work. His application was initially denied without consideration of any other alleged limitations. But by the time his application was again denied on reconsideration, the Commissioner had acknowledged his additional claim of mental limitations. Mr. Barrett sought a hearing before an Administrative Law Judge (ALJ). In rendering his decision, the ALJ followed the standard five-step sequential evaluation process to determine whether Mr. Barrett was disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (detailing 20 C.F.R. § 404-1520's five-step process).

At step two the ALJ found that Mr. Barrett had one severe impairment, degenerative joint disease of the bilateral hips, left greater than right. The ALJ concluded that the record did not support a finding of a severe mental impairment. At step four the ALJ determined that claimant could not perform his past relevant work as a prep cook at Denny's because he was unable to stand for six hours in an eight-hour workday. But ultimately the ALJ found at step five that there were jobs that exist in significant numbers in the national economy that the claimant could perform given his age, education, work experience, and residual functional

-2-

capacity (RFC). Therefore, in a decision dated May 24, 2007, the ALJ concluded that Mr. Barrett was not disabled.

The Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner. *See Diaz v. Sec'y of H.H.S.*, 898 F.2d 774, 776 (10th Cir. 1990). In November 2007, Mr. Barrett asked the Appeals Council to reopen his claim based upon new and material evidence. He submitted a report from a psychologist who evaluated claimant in September 2007, after the ALJ issued his decision. The Appeals Council found no reason to reopen and change the ALJ's decision. Mr. Barrett then filed an action in the district court, which issued an order denying his motion to reverse or remand, disposing of the claim.

### *Standard of Review and Discussion*

"[W]e review the ALJ's decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's.

*Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted).

In this appeal, Mr. Barrett raises issues concerning only the ALJ's evaluation of his mental impairments, specifically depression and learning disabilities. He argues that the ALJ committed legal error at step two in relying solely upon an assessment by an in-house, non-examining physician to conclude that claimant did not have a severe mental impairment. He argues, as well, that the ALJ's finding of no severe mental impairment is not supported by substantial evidence. Mr. Barrett also contends that the ALJ committed legal error in failing to develop the record with respect to claimant's mental impairments. Specifically, he asserts that the ALJ should have ordered a consultative psychological examination. Finally, Mr. Barrett claims that the ALJ again committed legal error in relying on testimony by a vocational expert (VE) at step five because her testimony conflicted with the Dictionary of Occupational Titles (DOT).

### *No Severe Mental Impairment*

The ALJ determined at step two that Mr. Barrett suffers from the severe impairment of degenerative joint disease of the bilateral hips, left greater than right. Claimant argues that the ALJ erred in failing to find at step two that his mental impairment was severe. Claimant has not identified any error at step two. Here the ALJ "made an explicit finding that [claimant] suffered from [a] severe impairment[]. That was all the ALJ was required to do in that regard." *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007). Under the regulations, once an

-4-

ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency "will consider the combined effect of all of [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523; *see also id.* § 416.945(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.") "After finding [a] severe impairment[], the ALJ still had the task of determining the extent to which [claimant's] impairments . . . restricted [his] ability to work." *Oldham*, 509 F.3d at 1257.

Because he alleged error only at step two, we could "easily dispose of" Mr. Barrett's first argument, *id.* at 1256. But even construing his argument as asserting an error at a later step, for example at the ALJ's step-four determination of his RFC, we find no basis to reverse the agency's determination. Claimant first makes a legal argument that the ALJ improperly relied solely upon a Psychiatric Review Technique assessment completed by Dr. Chiang, an in-house, non-examining physician, in support of his finding regarding the severity of claimant's mental impairment. Claimant's contention is without merit. Contrary to his assertion, the ALJ did not rely solely on Dr. Chiang's assessment in making his finding. He initially noted that Mr. Barrett failed to mention that he suffered from depression in two Disability Reports that he submitted to the agency. *See*

Aplt. App., Vol. I at 78-83, 109-15. But the ALJ considered claimant's own testimony that he was depressed and his wife's statement in a Function Report that he "became slightly depressed over the last four years," *id.* at 124. The ALJ also reviewed records from Mr. Barrett's primary care physician (PCP), indicating that he had been prescribed anti-depressant medication. These records included a report from claimant in September 2005 that the medication was beginning to help his paranoia and his wife's report that he was "less grumpy," *id.* at 177 (quotation omitted). Finally, the ALJ considered Dr. Chiang's assessment, which concluded that Mr. Barrett had no more than mild limitations in activities of daily living, in maintaining social functioning, in maintaining concentration, persistence, or pace, and that he had no episodes of decompensation. The ALJ concluded:

> I am in agreement with Dr. Chiang's assessment that the claimant does not have a severe mental impairment, and her ratings. I assign the opinion great weight. I find that the claimant's depression is controlled by his psychotropic medications,[2] and agree with his wife's assessment that he is only "slightly depressed." My finding that the claimant does not have a severe mental impairment is also consistent with the fact that he has not sought out any mental health

---

[2]     Contrary to Mr. Barrett's contention, this conclusion is supported by substantial evidence in the record. Although there is evidence that claimant discontinued two medications due to adverse side effects, as of March 2006 his medical records indicated that his depression was somewhat better despite his discontinuing medication. At that time he began taking a new medication. But he then failed to see his PCP for a full year. In March 2007 he reported that his depression had worsened after he ran out of his medication and he was given a refill prescription.

treatments, and only established a primary care physician after an absence of 3-4 years.

*Id.* at 41.

Moreover, to the extent that Mr. Barrett contends that the ALJ could not rely *at all* on a PRT assessment by a non-examining physician in making his finding regarding the severity of claimant's mental impairment, we again disagree. Contrary to claimant's assertion, Dr. Chiang did provide a rationale for her findings. In her assessment she made reference to Mr. Barrett's diagnosis with depression by his PCP, his treatment with an anti-depressant, and his report that his condition had improved with medication. Nor is this a case where the ALJ rejected the opinion of claimant's treating physician in favor of the conclusions of a non-examining doctor, because claimant's PCP offered no opinion on the severity of his depression.

Mr. Barrett also asserts that there was clearly de minimis proof in the record supporting a conclusion by the ALJ at step two that his mental impairments were severe. If we construe this argument as a contention that the ALJ's finding regarding his RFC at step four was therefore not supported by substantial evidence, his contention still lacks merit.[3] The ALJ found that Mr. Barrett's mental impairments were not severe and therefore included no

---

[3]    We note that Mr. Barrett has not argued that the ALJ erred in failing to assess the combined effect of his physical and mental impairments.

-7-

mental limitation in his RFC. *See* Aplt. App., Vol. I at 44 ("I do not find that the claimant has this additional [mental] limitation because I find that the claimant does not have a severe mental impairment."). We have already summarized the evidence that the ALJ relied on in assessing the severity of claimant's mental impairments. In addition, in formulating his RFC at step four, the ALJ indicated that he had carefully considered the entire record and all of claimant's symptoms to the extent that they were reasonably consistent with the evidence, including the objective medical evidence.[4] We find no reversible error.

### Failure to Develop the Record

Mr. Barrett also contends that the ALJ failed in his duty to develop the record regarding claimant's mental impairments. Specifically, he argues that the ALJ should have obtained a consultative psychological examination, as requested by his counsel before the hearing. He maintains that, where the evidence in the record establishes a "reasonable possibility of the existence of a disability and the

---

[4] Mr. Barrett attempts to bolster his argument regarding proof of a severe mental impairment with references to the report by a psychologist who examined him after the ALJ's decision denying benefits. Claimant first presented this report to the agency as new evidence in support of a motion to the Appeals Council to reopen his claim. The Appeals Council denied the motion. Our jurisdiction extends to the final decision of the Commissioner, following initial review in the district court. *See* 42 U.S.C. § 405(g). In this appeal Mr. Barrett does not seek review of the Appeals Council's refusal to reopen his application, nor would we have jurisdiction to review that decision. *See Nelson v. Sec'y of H.H.S.*, 927 F.2d 1109, 1111 (10th Cir. 1990) (holding district court has no jurisdiction to review Secretary's refusal to reopen an application absent a colorable constitutional claim).

result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability," *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), the ALJ is required to obtain a consultative examination.

We emphasize that the Commissioner "has broad latitude in ordering consultative examinations." *Id.* at 1166. When a claimant contends that the ALJ erred in failing to obtain a consultative examination, we are presented with the difficult issue of "decid[ing] what quantum of evidence a claimant must establish of a disabling impairment or combination of impairments before the ALJ will be required to look further." *Id.*

> The difficult cases are those where there is *some* evidence in the record or *some* allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling. . . . Our review of the cases and the regulations leads us to conclude that the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation.

*Id.* at 1167. In *Hawkins* we identified three instances when such an examination is often required: "where there is a direct conflict in the medical evidence"; "where the medical evidence in the record is inconclusive"; and "where additional tests are required to explain a diagnosis already contained in the record." *Id.* at 1166; *see also* 20 C.F.R. § 404.1519a (describing when a consultative examination is appropriate).

Mr. Barrett contends that the medical evidence in the record in this case was inconclusive. He points to the following evidence in support of his argument: his allegation of disability based on a combination of physical and mental impairments; his history of a suicide attempt and special education classes 20 years before the adjudicated period; his history of taking anti-depressant medication; his testimony that his wife filled out agency forms on his behalf—based on information he provided to her regarding his daily activities, his medical and psychological impairments, and his work history—because he did not understand the forms; his wife's general comment in one of these forms that claimant had difficultly following oral and written instructions; and his testimony about having co-workers read written instructions to him at his job at Denny's. Mr. Barrett argues that "[a]ll of the foregoing facts triggered the ALJ's duty to develop the record in this case by obtaining a consultative psychological examination . . . to clarify the extent of his mental impairments." Aplt. Opening Br. at 18.

In response to claimant's summary of the record, the Commissioner points out that Mr. Barrett did not seek medical treatment for any impairment until after he applied for disability benefits and did not initially report any symptoms of a mental impairment; his medication was effective in controlling his depression during the adjudicated period and his wife described him as only slightly depressed; his PCP never referred him for a mental health evaluation; the

consultative physician who examined claimant with respect to his physical impairment did not observe any mental difficulties during the examination; Dr. Chiang found in her PRT assessment that claimant's depression resulted in only mild ratings in mental function areas and was therefore not severe; Mr. Barrett reported daily activities involving some level of concentration and comprehension, including watching television, playing video games, reading gaming magazines, and using the computer; he continued to work part time during the adjudicated period; his wife indicated that he could pay bills, count change, and handle bank accounts; and he testified that he was able to follow oral instructions at work.

The claimant in *Cowan* raised the same claim of error regarding the ALJ's failure to obtain a consultative examination. We held that "there was no need to further develop the record because sufficient information existed for the ALJ to make her disability determination." 552 F.3d at 1187. We specifically noted the record evidence regarding the claimant's daily activities and physical abilities, the medical consultant's PRT assessment finding a mental impairment that resulted in only mild restrictions and difficulties, and the lack of evidence suggesting that the claimant's mental impairment had any greater effect on his ability to work. *Id.* Here, the evidence in the record is substantially similar and our conclusion is the same as in *Cowan*. The evidence indicated that claimant's depression was controlled by his medication and resulted in only mild restrictions and difficulties

-11-

related to his activities of daily living, social functioning, and maintaining concentration, persistence, and pace. As to claimant's testimony and his wife's comments in agency forms regarding his difficulties related to concentration and following instructions, we note that "[i]solated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a non-exertional impairment." *Hawkins*, 113 F.3d at 1167. We hold that the ALJ did not err in failing to obtain a consultative psychological examination of Mr. Barrett.[5]

### *Conflict Between VE Testimony and DOT*

Mr. Barrett contends that there is a conflict between the VE's testimony and the DOT, and that the ALJ erred in relying on the VE's testimony without first resolving the conflict. "If the ALJ concludes that the claimant cannot perform any of his past work with his remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). Furthermore, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the

---

[5] Unlike *Madrid*, this case does not present an issue whether the ALJ erred in failing to request existing medical records of which he was aware. *See* 447 F.3d at 791; *Hawkins*, 113 F.3d at 1166 n.5 ("We are not confronted here with a situation where evidence already exists, and the ALJ must simply take the appropriate steps to acquire it.").

[DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* at 1091; *see also* SSR 00-4p, 2000 WL 1898704, at \*4 ("When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled.").

At the hearing in this case the VE testified that, based upon the ALJ's limitation of Mr. Barrett to sedentary work, he would not be able to perform his past relevant work. The ALJ then asked the VE one hypothetical question, assuming an individual who is the same age as claimant, with the same educational and vocational background, who could perform only sedentary work. As relevant to the issue raised here by claimant, the ALJ also limited this hypothetical individual to "simple tasks and only tasks that require him to exercise occasional judgment." Aplt. App., Vol. I at 233. The VE interpreted this limitation to mean that the hypothetical individual could only perform work that involved "simple one and two step tasks." *Id.* at 234. She mentioned two unskilled sedentary jobs that she believed the individual could not perform because they "have more than one or two steps and there is judgment involved." *Id.* The VE testified that, with the additional limitation included by the ALJ, she could identify only one occupation that this hypothetical individual could perform, specifically the job of jewelry preparer.

Mr. Barrett asserts that the description of the jewelry preparer job in the DOT indicates that it requires level-two reasoning, which is defined as: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT 700.687-062 (4th ed., revised 1991), 1991 WL 678937(citing level-two reasoning as applicable to jewelry preparer job). He argues that the requirement for a jewelry preparer to carry out detailed oral and written instructions is inconsistent with the VE's characterization of this occupation. In response, the Commissioner cites *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), in which we concluded that a limitation to "simple and routine work tasks" appeared "more consistent" with level-two reasoning than with a reasoning level of three. *Id.* at 1176 (quotation omitted).

Mr. Barrett bases his argument entirely on the additional mental limitation that the ALJ included in his hypothetical to the VE. But claimant ignores the ALJ's express finding that this limitation *did not apply to Mr. Barrett*. Contrary to claimant's assertions, the ALJ ultimately concluded that he had an RFC for unskilled sedentary work, uneroded by any mental limitation:

> To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity that included the additional limitation of "only occasional use of judgment." *In fact,*

-14-

*I do not find that the claimant has this additional limitation because I find that the claimant does not have a severe mental impairment.*

Aplt. App., Vol. I at 44 (emphasis added). The ALJ continued by concluding that:

> Even with this added limitation, the vocational expert was still able to identify that an individual would be able to perform the requirements of [a] representative occupation such as a jewelry preparer. . . .
>
> . . . .
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

*Id.* Thus, the ALJ found that, without a mental limitation, Mr. Barrett could perform the jewelry preparer job with his unskilled sedentary RFC. Claimant does not contend that there is any conflict between his RFC and the DOT description of the jewelry preparer job. Nor has he identified any other basis for finding error in the ALJ's conclusion at step five.

## *Conclusion*

The judgment of the district court is AFFIRMED.

Entered for the Court


Stephen H. Anderson
Circuit Judge