FILED
United States Court of Appeals
Tenth Circuit

March 13, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARGARET SULLIVAN,

Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,[*]

Defendant-Appellee.

No. 12-5147
(D.C. No. 4:11-CV-00266-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[**]

---

Before **BRISCOE**, Chief Judge, **HOLLOWAY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

---

Margaret Sullivan appeals the district court's order affirming the

Commissioner's denial of her application for Social Security Disability Insurance

---

[*]    In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in
this action.

[**]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

benefits.  We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291 and affirm.

I.

Ms. Sullivan was born in 1969 and sought disability benefits in 2007 for memory issues, blood pressure, bipolar disorder, anxiety, depression, and thyroid issues.  The Magistrate Judge's decision thoroughly describes the medical evidence in the record, thus we do not repeat it here.

Following a hearing, the administrative law judge (ALJ) denied benefits at step five of the sequential evaluation process.  *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (describing five-step process).  At steps one through three, the ALJ found that Ms. Sullivan had severe impairments of borderline personality disorder, depression, prior knee surgery, and carpal tunnel syndrome, but that her impairments did not meet the criteria to be considered presumptively disabled.  The ALJ then determined that Ms. Sullivan had the residual functional capacity (RFC) to perform sedentary work, limited to simple tasks under routine supervision, with no contact with the public on a continuous basis.  Given her RFC, the ALJ determined at step four that Ms. Sullivan was unable to return to any of her past work but, at step five, could perform work that is available in significant numbers in the national economy, such as a trimmer, clerical mailer, or sorter.  Thus, the ALJ ruled Ms. Sullivan was not disabled.

The Appeals Council denied review, and a Magistrate Judge, presiding pursuant to 28 U.S.C. § 636(c)(1), affirmed the Commissioner's decision. "We review the Commissioner's decision to determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks omitted).

On appeal, Ms. Sullivan first contends the ALJ failed to correctly evaluate the medical source evidence. Second, she contends the ALJ failed to support his credibility determination with respect to her mental impairments. We agree with the Magistrate Judge that Ms. Sullivan did not sufficiently develop this second issue in the district court, and that it was therefore waived. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of our review . . . is limited to the issues the claimant properly preserves in the district court and adequately presents on appeal." (alteration and internal quotation marks omitted)); *see also Wall v. Astrue*, 561 F.3d 1048, 1065, 1066 (10th Cir. 2009) (declining to consider issues that were not supported with any developed argumentation before the district court). As to the remaining medical source issue, upon reviewing the record and the relevant legal authorities, we perceive no reversible error.

"An ALJ must evaluate every medical opinion in the record, *see* 20 C.F.R. § 404.1527(d), although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Additionally, "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Ms. Sullivan first argues that the ALJ incorrectly considered the consultative medical evaluation of Dr. Hansen, a neuropsychologist. Dr. Hansen observed that Ms. Sullivan's concentration, persistence and pace were within normal limits; she exhibited depression; she had poor emotional insight; she described difficulty relating to others; and she appeared to be easily overwhelmed by stress. He reported that she scored 28 out of 30 on the Folstein Mini Mental Evaluation, which indicates normal cognition. His impression was that Ms. Sullivan had probable borderline personality disorder with difficulty stabilizing her mood. He opined that "[i]t is likely she will experience difficulty working within the majority of competitive environments," but that "[s]he was informed about the availability of vocational rehabilitation services and the need to locate work within a highly structured and supportive setting if possible." Aplt. App. Vol. III, at 426. Dr. Hansen concluded that Ms. Sullivan's "[g]ross mental status functioning is within normal limits," *id*., and that '[h]er

primary challenge to employability would appear to be her inability to tolerate stress due to triggering her borderline characteristics with volatile mood and exacerbation of depression." *Id.* at 426-27.

The ALJ wrote three paragraphs summarizing Dr. Hansen's opinions. In reaching his RFC determination, the ALJ explained that he gave significant weight to Dr. Hansen's opinion that Ms. Sullivan's gross mental status was within normal limits but less weight to his opinion that she would have difficulty working within a majority of competitive environments. As noted, the ALJ's RFC limited Ms. Sullivan to simple tasks under routine supervision, with no regular contact with the public.

But Ms. Sullivan argues the ALJ's evaluation was flawed because he did not discuss Dr. Hansen's belief that she needed to work in a highly structured and supportive environment and was unable to tolerate stress. Ms. Sullivan contends these limitations given by Dr. Hansen conflict with the ALJ's RFC assessment and, thus, the ALJ should have explained why he rejected part of Dr. Hansen's opinion while adopting others, citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (holding that an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

We find no error. First, we agree with the Magistrate Judge that Dr. Hansen's statements that Ms. Sullivan might have difficulty working in the majority of competitive environments and should locate work within a highly structured and

- 5 -

supportive setting are not "true medical opinion[s]" about the nature and severity of her mental limitations. *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (explaining that a "true medical opinion" is one that contains a doctor's "judgment about the nature and severity of [the claimant's] limitations, or any information about what activities [the claimant] could still perform," citing 20 C.F.R. § 404.1527(a)(2)). Rather, these are vocational opinions, which are reserved for the Commissioner to make. *Id.*

Second, we further agree with the Magistrate Judge that the ALJ did not ignore, and his RFC assessment does not conflict with, Dr. Hansen's medical opinions; thus, *Haga* is inapposite. In *Haga*, the ALJ adopted some of the mental restrictions identified by the treating physician, but disregarded other restrictions without any explanation. 482 F.3d at 1207-08. Here, in contrast, the ALJ's RFC determination that Ms. Sullivan was limited to unskilled, supervised work with no regular public contact adequately addressed Dr. Hansen's medical opinion that Ms. Sullivan's gross mental status is within normal limits but that she is unable to tolerate stress due to her probable borderline personality disorder.

Ms. Sullivan next argues that the ALJ did not evaluate properly the opinion of the non-examining state agency medical doctor. On Section I of the Mental Residual Functional Capacity Assessment Form SSA–4734–F4–SUP (Mental RFC Form), the state agency doctor checked a box indicating that Ms. Sullivan was moderately limited in the ability to maintain attention and concentration for extended periods,

maintain a schedule and regular attendance, and complete a normal workday. *See* Aplt. App. Vol. III, at 444-45. In Section III of the Mental RFC Form, Functional Capacity Assessment, the state agency doctor concluded that Ms. Sullivan "does not respond well to stress and she is very emotional and would have some problems working on account of these difficulties, but should be able to perform unskilled work activity." *Id.* at 446. The ALJ found that this opinion supported his RFC determination.

Ms. Sullivan argues the limitations noted in Section I are in addition to those in Section III and, thus, the ALJ's RFC assessment is flawed because it failed to mention the moderate limitations on performance indicated in Section I of the Form. We again find no error. According to the guidance in the Social Security Administration's Program Operations Manual System (POMS), "Section I [of the Mental RFC Form] is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment[, whereas] Section III—Functional Capacity Assessment, is for recording the mental RFC determination." POMS DI 24510.060 (emphasis omitted), *available* at https://secure.ssa.gov/poms.nsf/lnx/0424510060. "It is in [Section III] that the actual mental RFC assessment is recorded, explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* Thus, as the Magistrate Judge ruled, the ALJ accepted the state agency's ultimate opinion that,

with all of the moderate limitations, Ms. Sullivan could perform unskilled work. We have repeatedly held that while an ALJ must consider all of the evidence in the record, nothing requires the discussion of every piece of evidence. *See, e.g., Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

III.

The Commissioner's decision applied the correct legal standards, and it is supported by substantial evidence. For these reasons, the judgment of the district court is affirmed.

Entered for the Court


Mary Beck Briscoe
Chief Judge