FILED
United States Court of Appeals
Tenth Circuit

December 16, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JULIE RUSSELL,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant-Appellee.

No. 09-4059
(D.C. No. 2:08-CV-00447-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

Julie Russell appeals from the district court's affirmance of the

Commissioner of Social Security's denial of disability benefits. She argues that

(1) the administrative law judge (ALJ) failed to properly evaluate her treating

doctors' mental-impairment opinions and (2) the ALJ's treatment of the opinions

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

negatively impacted the residual functional capacity (RFC) determination. We affirm.

## I.

In December 1999, while on a business trip, Ms. Russell was involved in an automobile accident. She received treatment for her injuries and returned to work a few days later. One day in June 2000, she awakened with pain and was unable to get out of bed. She never returned to work.

In March 2004, Ms. Russell applied for disability benefits beginning June 2, 2000, based on headaches, neck pain, fibromyalgia, jaw pain, back pain, hearing loss, shoulder pain, right arm numbness, depression, and anxiety. She stated that she stopped working in June 2000 because of pain, fatigue, and anxiety. Her application was denied initially and on reconsideration. Following a hearing, the ALJ issued a decision, applying the five-step sequential evaluation process for determining whether a claimant is disabled, and concluding that Ms. Russell was not disabled through her last date insured, March 31, 2007. *See* 20 C.F.R. § 404.1520 (setting out five-step process). The ALJ found that Ms. Russell suffered from several severe impairments: back disorders, fibromyalgia, hearing loss, post-concussion syndrome, depressive disorder NOS with anxiety, and a somatoform disorder. But he also found that her impairments, singly or in combination, were not so severe that they met the listings. The ALJ specifically rejected Ms. Russell's assertion that she met Listings 12.04 for

affective disorders and 12.06 for anxiety-related disorders. *See id.* pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. Although the ALJ concluded that Ms. Russell could not perform her past work, he decided that she, a twenty-nine year old with a college education, could perform a full range of sedentary, unskilled work, subject to certain specific limitations, including working at low stress, concentration, and memory levels. Finally, the ALJ determined that work she could perform, such as a surveillance systems monitor, was available in the national economy.

After the Appeals Council denied Ms. Russell's request for review, the ALJ's decision became the final decision of the Commissioner. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Ms. Russell appealed to the district court, which upheld the Commissioner's denial of benefits. She then appealed to this court.

## II.

"We review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record viewed as a whole and whether he applied the correct legal standards." *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007) (alteration and quotation omitted). "We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Cowan v.*

*Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted).  We will uphold the ALJ's decision even if we might have made a different choice if the case had been before us for de novo review.  *See id.*

III.

A.

Ms. Russell first argues that the ALJ failed to properly evaluate and provide specific and legitimate reasons for the weight he assigned to the opinions of Dr. Thomas A. Curtis and Dr. Ted Harris, Ph.D., her treating mental-health doctors.  She faults the ALJ for failing to consider whether the testing and techniques they used supported their professional opinions and for dismissing their opinions with a boilerplate statement.  She contends that the ALJ should have given their opinions controlling weight.

The standards an ALJ must follow when analyzing a treating doctor's opinion are settled.  The ALJ first considers "whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record."  *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).  If so, the ALJ must give the opinion controlling weight.  *Id.*  But if the ALJ decides "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight."  *Id.*

-4-

Relevant factors the ALJ may consider are set forth in 20 C.F.R. § 404.1527(d).

These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation omitted).

"Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotation omitted). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Id.* (quotation omitted). "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* (quotation omitted).

The ALJ recognized these standards, declining to give controlling weight to the doctors' opinions, yet giving the opinions some weight by recognizing that Ms. Russell had serious mental impairments that affected her RFC for work. The ALJ rejected as unsupported by the records and clinical notes Dr. Curtis's opinion

-5-

given on December 2, 2004 that Ms. Russell was temporarily totally disabled

since June 9, 2000 and was eligible for social security benefits.

> Although the [ALJ] accepts the opinions of Dr. Curtis with regard to
> medical issues and diagnosis relating to the nature and severity of the
> claimant's impairments, the opinion as to the claimant's residual
> functional capacity, the ability to do past work, the ability to do other
> work and whether there is a disability under the Social Security Act
> are all issues reserved to the Commissioner. Records indicate
> Dr. Curtis did not see claimant on a continuing basis, but only on
> three separate occasions. . . . On two of those occasions, Dr. Curtis
> opined the degree of permanent emotional impairment would be
> estimated as slight-to-moderate only and that, ". . . there have not
> been any periods of temporary total disability time off from work on
> a purely psychiatric basis."

Aplt. App., Vol. 1 at 39-40.

> Likewise, the ALJ did not accept Dr. Harris's opinions of disability
>
> because his opinion of June 8, 2005 that the claimant was unable to
> work due to a lack of sustained focus and his opinion submitted on
> May 17, 2007 that she had numerous marked mental limitations and,
> therefore, met Listings 12.04 and 12.06 are not supported by the
> record nor are they supported by his own clinical notes. . . .
> Although the [ALJ] accepts the opinions of Dr. Harris with regard to
> medical issues and diagnosis relating to the nature and severity of the
> claimant's impairments, the opinion as to the claimant's residual
> functional capacity, the ability to do past work, the ability to do other
> work and whether there is a disability under the Social Security Act
> are all issues reserved to the Commissioner. Dr. Harris only treated
> claimant for a short period of time, October 11, 2004 through
> January 31, 2005, and, . . . during that short period, claimant was
> noted to be doing well most of the time.

*Id.* at 40.

Additionally, the ALJ gave diminished weight to Dr. Curtis's and

Dr. Harris's opinions "as they indicate extreme limitations that are unsupported

-6-

by the objective evidence, especially in light of the fact that her mental health treatment has been sporadic at best. As well, these opinions are not supported by [her] own description [of] her activities of daily living, which . . . are highly active." *Id.* Thus, the ALJ found that the administrative record showed that Ms. Russell had limitations but not to the extent suggested by these two doctors.

In our review, we first consider whether the ALJ properly analyzed Dr. Curtis's and Dr. Harris's opinions to determine if either or both were entitled to controlling weight. As indicated above, there are two components to the analysis: (1) "whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques"and (2) whether the opinion "is consistent with the other substantive evidence in the record." *Pisciotta*, 500 F.3d at 1077. As Ms. Russell asserts, the ALJ did not address expressly the first component. He did, however, consider whether the opinions were consistent with the other record evidence. And he did state that he had considered the medical evidence in accordance with the regulations and applicable Social Security Rulings that discuss the weight to give a treating doctor's opinion. *Cf. Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter."). The ALJ's failure to discuss the first component is not an indication that he failed to apply proper legal standards, as both components must be met in order for the opinion to have controlling weight. *See* SSR 96-2p, 1996 WL

374188, at *2 (stating that controlling weight cannot be given to an opinion that is not well-supported *or* is not consistent with other substantial evidence). Consequently, the ALJ was not required to discuss both components if one was not met.

There was substantial evidence to support the ALJ's findings that the doctors' opinions were not consistent with the other substantive evidence in the record. As the ALJ noted, Ms. Russell's mental health treatment was sporadic. She had no treatment from July 2001 to October 2004, although she admitted that she had the ability to obtain treatment if she needed it. During her time of alleged disability, she was quite active. She bore two children, was their primary caretaker, drove, went to movies and church, played Bunko, did housework and laundry, ran errands for as long as four hours at a time, traveled to Hawaii, and took tae kwon do classes until she was spotted doing so by a workers' compensation investigator. She indicated that she would have preferred to exercise more, but did not do so because of the investigation.

Also, the ALJ appropriately found that Ms. Russell had limited treatment by both Dr. Curtis and Dr. Harris. She saw Dr. Curtis only three times. Although his reports were thorough, two of the three times he indicated that she was not disabled due to mental impairments. Ms. Russell saw Dr. Harris for only four months. Although he stated that she met Listings 12.04 and 12.06, we agree with the ALJ that his treatment notes did not support that conclusion. We therefore

conclude that the ALJ properly did not give controlling weight to the opinions of Dr. Curtis and Dr. Thomas.

Moreover, the ALJ properly discounted their opinions that Ms. Russell could not work, met the listings, and was entitled to social security disability benefits. Those opinions infringed on the issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e) ("Opinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case[.]"); *id.* § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-8p, 1996 WL 374184, at *7 n.8 ("A medical source opinion that an individual is 'disabled' or . . . has an impairment(s) that meets . . . a listing, . . . is an opinion on an issue reserved to the Commissioner.").

Ms. Russell faults the ALJ for using almost identical boilerplate language about issues reserved to the Commissioner that does not contain analysis or citation and fails to cite contradictory evidence. While the ALJ did use some boilerplate language, a practice we have disapproved of on several occasions, *see, e.g., Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004), the ALJ did not limit his analysis to boilerplate language. Instead, he specifically found that Dr. Curtis and Dr. Harris saw Ms. Russell only a limited number of times and the record as a whole, which the ALJ summarized in his decision, did not support a

disability determination.  We conclude that the ALJ provided a sufficient explanation with sufficiently specific evidence for not giving controlling weight to the opinions that Ms. Russell was disabled.

Because Dr. Curtis's and Dr. Thomas's opinions of disability were not entitled to controlling weight, we next consider whether the ALJ gave them an appropriate amount of weight.  And we conclude that the ALJ did so.  The several pages the ALJ devoted to discussing Ms. Russell's impairments, the medical opinions, and the reasons for the RFC assessment demonstrate that the ALJ adequately considered the evidence and gave proper weight to the opinions of Dr. Curtis and Dr. Harris.  As discussed above, the record shows that Dr. Curtis and Dr. Harris had short treatment relationships with Ms. Russell and that her activity level was contrary to the disability opinions of the two doctors.

### B.

Ms. Russell next argues that the ALJ's RFC assessment did not adequately account for the opinions of Dr. Curtis or Dr. Harris.  This argument is based on Ms. Russell's assertion that the ALJ failed to afford proper weight to their opinions.  Because we have concluded that the ALJ afforded proper weight to the opinions, we also conclude that the ALJ's RFC properly accounted for the opinions.[1]

---

[1]      We need not consider Ms. Russell's final argument that this court should reverse the denial of benefits and enter an order for an immediate

(continued...)

IV.

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[1](...continued)
payment of benefits.