FILED
United States Court of Appeals
Tenth Circuit

January 27, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

VIRGINIA HUNTER-HENDRIX,

Plaintiff‑Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

Defendant‑Appellee.

No. 09-6056
(D.C. No. 5:07-CV-01416-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

Claimant Virginia Hunter-Hendrix appeals from the district court's order

affirming the decision of the Social Security Commissioner to deny her

application for disability-insurance benefits.  Ms. Hunter-Hendrix argues that the

administrative law judge ("ALJ") failed to follow prescribed standards in

evaluating her physicians' opinions and in determining whether she could make a

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

successful adjustment to other work that exists in significant numbers in the national economy. We exercise jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g) and conclude that the ALJ's decision does not apply the correct legal standards to the medical evidence. Accordingly, we REVERSE and REMAND for further proceedings.

## I. BACKGROUND

### A. Procedural History

Ms. Hunter-Hendrix's social security case has a lengthy history. Alleging disability due to back problems, she initially applied for benefits on August 8, 2001, when she was fifty-one years old. An Administrative Law Judge (ALJ) issued an unfavorable decision on April 22, 2004. On administrative review, however, the Appeals Council vacated the ALJ's decision. The Appeals Council remanded the matter, instructing the ALJ to further consider Ms. Hunter-Hendrix's complaints. In particular, the ALJ was to supplement the medical and vocational evidence and evaluate the additional evidence in accordance with the agency's regulations.

The ALJ obtained additional evidence, held a hearing twenty-one months after the remand, and conducted a supplemental hearing eight months later. He issued his second unfavorable decision on June 29, 2007, finding Ms. Hunter-Hendrix not disabled at step five of the sequential evaluation process. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the agency's five-step

framework for determining disability). The Appeals Council denied Ms. Hunter-Hendrix's request for review, and the district court affirmed the Commissioner's decision. In the eight years since she applied for benefits, Ms. Hunter-Hendrix's insured status expired.

### B. Medical History

Ms. Hunter-Hendrix first suffered a work-related back injury in the late 1980s and underwent back surgery in March 1991. She re-injured her back in July 2000. In spite of conservative treatment during the fall of that year, she continued to have back problems and stopped working at her production-assembly job in November. Throughout 2000, her physicians limited her lifting, pushing, bending, and stooping movements. Dr. Evans, an examining orthopedist, placed her lifting limit at ten pounds in September 2000. The most optimistic opinions were expressed by Dr. Hess, a treating physician (through his physician's assistant), and Dr. Wright, an orthopedist. They opined that Ms. Hunter-Hendrix could lift up to twenty pounds.

In January of 2001, Dr. Wright and Dr. Metcalf, an examining physician, recommended back decompression surgery. Dr. Wright performed a revision lumbar laminectomy on January 22, 2001. (An examining physician, Dr. Saidi, described the procedure as one to remove scar tissue.) After the surgery, treating, examining, and reviewing physicians again evaluated Ms. Hunter-Hendrix's restricted ability to lift, bend, and stoop. From March 2001 to October 2003, they

reached and expressed somewhat divergent opinions. There is then a gap in the medical record.

After the remand order, however, the ALJ requested two additional disability examinations. Dr. Saidi examined Ms. Hunter-Hendrix on April 10, 2006 and noted her history of degenerative disk disease, herniated disk, spinal stenosis, and chronic obstructive pulmonary disease. He found she could stand for four hours and sit for four hours as long as she changed position every thirty minutes. She could lift ten pounds frequently, carry five pounds frequently, and lift eleven to fifty pounds occasionally. In addition, Ms. Hunter-Hendrix's condition required a moderate restriction of activities involving unprotected heights, moving machinery, marked changes in temperature and humidity, exposure to dust, fumes, and gases, driving, and vibrations.

On February 12, 2007, Dr. Chaudry also conducted an agency-requested examination. According to his findings, Ms. Hunter-Hendrix could sit for six hours during a work day, thirty to forty minutes at a time, and stand for about six hours, twenty minutes at a time. She was restricted to lifting twenty pounds occasionally. Dr. Chaudry found no environmental restrictions.

### C.    Vocational History

Ms. Hunter-Hendrix, who has an eighth-grade education, performed the past relevant work of "assembly, production," and "hand assembling." II Aplt. App. at 417. Most recently, she repaired computer boards, using soldering guns

and lifting tubs that weighed fifteen to thirty pounds. In that job, she could sit or stand as she worked, frequently lifted twenty-five pounds, and occasionally lifted up to fifty pounds.

Three different vocational experts have given their opinions on the classification of Ms. Hunter-Hendrix's past work. They generally believed that Ms. Hunter-Hendrix had performed light to medium, semiskilled work.

### D.    Remand Proceedings

On remand, the ALJ was instructed to supplement the medical and vocational evidence and to take the additional evidence into consideration under the applicable agency regulations. He added Dr. Saidi's and Dr. Chaudry's opinions to the medical record. The ALJ was then tasked with determining the weight to be accorded the opinions of the many treating, examining, and non-examining physicians. And with regard to the vocational evidence, he was to determine if Ms. Hunter-Hendrix had any transferable skills and then identify any appropriate jobs in the national economy.

At the remand hearing, the ALJ took telephone testimony from a reviewing medical expert, Dr. McCaron. The gist of Dr. McCaron's testimony was that the medical records didn't explain the source of Ms. Hunter-Hendrix's pain. Dr. McCaron questioned Dr. Wright's diagnosis of spinal stenosis, and stated that a herniated disc "doesn't necessarily mean there is or isn't a problem." *Id.* at 410.

-5-

Eight months later, the ALJ held a supplemental hearing, at which another reviewing medical expert, Dr. Raulston, testified. Dr. Raulston expressed his view that Ms. Hunter-Hendrix was "capable of light duty, [lifting] 20 pounds occasionally and frequently, standing/walking a total of six out of eight, with the opportunity to change positions every 30 to 60 minutes as needed." *Id.* at 458 (parenthetical omitted). She couldn't crawl, but could occasionally climb, crouch, balance, kneel, and stoop. She had no environmental limitations except for performing hazardous duties. Dr. Raulston felt the inconsistencies between the examining physicians Dr. Saidi and Dr. Chaudry were "just a difference of opinion." *Id.* at 460. He stated that nothing in the record "show[s] she actually got worse or better" between the two examinations. *Id.*

Two new vocational experts testified after remand. At the supplemental hearing, a vocational expert proposed three jobs in response to the ALJ's hypothetical questions about light, semiskilled work allowing for a sit/stand option: bench assembler, barrel solderer, and electric motor assembler.

The ALJ then issued his decision denying benefits. On the issue of Ms. Hunter-Hendrix's medical condition, he essentially adopted the testimony of the second testifying expert, Dr. Raulston. He found that Ms. Hunter-Hendrix suffered from the severe impairments of spinal stenosis, chronic obstructive pulmonary disease, recurrent herniated disc, and degenerative disc disease. She was of "advanced age or . . . approaching advanced age" and was unable to

-6-

perform her past relevant work. *Id.* at 20. Nevertheless, she had the residual

functional capacity to "stand or sit and stand for 4 hours out of an 8-hour

workday," but "must change positions every 30 to 60 minutes." *Id.* at 20. She

"retain[ed] the residual functional capacity to perform a wide range of light work

activity because she could lift and carry 20 pounds occasionally and 10 pounds on

a frequent basis." *Id.* Apparently relying on the testimony of Ms. Sullivan, the

third vocational expert, the ALJ decided that despite her limitations Ms. Hunter-

Hendrix could perform the three jobs existing in significant numbers in the

national economy, as suggested by the final vocational expert. He therefore

found her not disabled and not entitled to disability insurance benefits.

The appeals council denied review and Ms. Hunter-Hendrix sought review

in the district court. The district court found no error in the ALJ's treatment of

the medical evidence.[1] Concerning vocational issues, the court determined that

ALJ properly found that Ms. Hunter-Hendrix had acquired transferable skills in

her previous jobs. The court, however, concluded that two of the jobs supporting

the alternative-work finding--bench assembler and barrel solderer--were

inappropriate or unsupported by the evidence. Nevertheless, the court determined

that the remaining position of electric-motor assembler was sufficient to support

the ALJ's decision, without explicitly considering whether this single job existed

---

[1]     On judicial review, the district court adopted the magistrate judge's report
and recommendation.

in significant numbers in the national economy.  The district court therefore affirmed the Commissioner's decision.

## II.  DISCUSSION

"We review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record viewed as a whole and whether he applied the correct legal standards." *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007) (alteration and quotation omitted).  "We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted).

An ALJ's decision is "evaluated based solely on the reasons stated in the decision," without engaging in a "post hoc effort to salvage" it. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  This court does not "overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Id.* at 1084-85 (quotation omitted).

Under the Commissioner's regulations, an ALJ is required to evaluate every medical opinion in the record, giving varying weight to each opinion "according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  "An  ALJ must also

consider a series of specific factors in determining what weight to give any medical opinion." *Id.*[2]

A "treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations. . . ." *Id.* (quotation omitted). If an ALJ rejects a treating physician's opinion and relies instead on the opinion of another medical source, he has a well-defined course to follow. *Id.* First, he must "articulate specific, legitimate reasons" for the rejection. *Id.* (quotation omitted). Second, he must "explain the weight" accorded the opinion of an examining or nonexamining physician and "give good reasons in his written decision for the weight he gave to the treating physician's opinion." *Id.*

---

[2] These factors include:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. United States Dep't. of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

The extended pendency of this case resulted in a copious medical record. In spite of the daunting task facing the ALJ, however, the above standards remain applicable. Our review indicates that the ALJ's written decision does not mention the opinions of examining-physicians Evans and Metcalf or testifying-physician McCaron. And though the decision summarizes the opinion of treating-physician Hess (as signed by his physician-assistant), it does not articulate reasons for discounting the October 6, 2000, statement that Ms. Hunter-Hendrix could lift only fifteen pounds, which would preclude her from performing light work. In addition, there are inconsistencies between the opinions of examining physicians Saidi and Chaudry, concerning Ms. Hunter-Hendrix's ability to lift or carry, the length of time she can sit and stand during a work day, her need to change positions, and the imposition of environmental restrictions. But the ALJ's decision does not discuss or explain the weight he assigned to each of these opinions. He also does not explain why he relied almost completely on the opinion of reviewing-and-testifying physician Raulston.

We acknowledge that the Commissioner's appellate brief suggests reasons for the ALJ's determination. Our role on judicial review, however, does not include speculation on how the ALJ weighed the medical-opinion evidence. We do not provide a post hoc rationale for his conclusion. *See Robinson,* 366 F.3d at 1084. And the magistrate judge was incorrect in stating, without citation, that "the mere fact that the ALJ did not explicitly consider what weight to give to each

-10-

of the physicians' opinions is not error" because *"[m]uch* of the evidence was in agreement. . . ." I Aplt. App. at 21 (emphasis added). In an instance in which "*none* of the record medical evidence conflict[ed] with the ALJ's conclusion that claimant can perform light work," we decided there was a lesser need for the ALJ "to reject or weigh evidence unfavorably in order to determine a claimant's RFC." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (emphasis added). In light of the discrepancies in medical opinion, however, that principle does not apply to Ms. Hunter-Hendrix's case. The ALJ did not follow the correct legal standards in considering the medical-opinion evidence, so we must reverse and remand on this issue.

Ms. Hunter-Hendrix also makes two arguments concerning the ALJ's treatment of the vocational record. Our direction on the evaluation of the medical evidence means that these issues may not arise on remand. Accordingly, we decline to address them.

It is unfortunate that the decision-making process on Ms. Hunter-Hendrix's claim has been so prolonged.  Nevertheless, we REVERSE the decision of the district court and REMAND the case with instructions to remand it to the Commissioner for further proceedings in accordance with this decision.


Entered for the Court


Jerome A. Holmes
Circuit Judge