**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 14, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TERESA L. FREEMAN,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

Defendant-Appellee.

No. 11-5017
(D.C. No. 4:09-CV-00554-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

Theresa L. Freeman appeals from the denial of her applications for social

security disability insurance benefits under Title II of the Social Security Act and

supplemental security income benefits under Title XVI of the Act. We have

jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I. Background

Ms. Freeman applied for benefits in June 2007, alleging she was unable to work as the result of obesity and an on-the-job back injury that had occurred in February 2007. Her applications were denied at the administrative level, on reconsideration, and after a hearing before an administrative law judge (ALJ). The ALJ found that Ms. Freeman's degenerative disk disease and obesity were severe impairments, but that none of her impairments, either alone or in combination, met or equaled one of the listings. Admin. R. at 284. The ALJ further found that Ms. Freeman had "has the residual functional capacity to perform less than the full range of light work . . . is able to lift/carry 20 pounds occasionally or 10 pounds frequently, . . . can stand and/or walk up to 6 hours total, sit approximately 6 hours during an 8-hour workday, and she can only occasionally stoop." *Id.* at 285.

A vocational expert (VE) testified at the hearing that, even if Ms. Freeman were limited only to sedentary work, she could still perform the jobs of order clerk or clerical mailer. *Id.* at 29. Relying on this testimony and medical opinions from an examining physician and a reviewing physician, the ALJ denied benefits at step five of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (describing five-step evaluation process); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (same). The ALJ found that, based on her "age, education, work experience, and residual functional capacity,

-2-

[Ms. Freeman was] capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 288.

After the Appeals Council denied her request for review, Ms. Freeman filed her complaint in the district court, and the parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The magistrate judge affirmed the Commissioner's denial of benefits, and Ms. Freeman now appeals.

## II.  Discussion

> In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency. Instead, we review the ALJ's decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.

*Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (citations and internal quotation marks omitted). Ms. Freeman raises two issues: whether the ALJ failed to properly evaluate the opinion of Dr. Martin, whom she characterizes as a treating physician, and whether the ALJ's credibility determination was proper.

### A.  Consideration of Physicians' Opinions

Regarding her back injury, Ms. Freeman relied, among other things, on reports from two physicians, Dr. Jim Martin and Dr. David Traub, who saw her solely in connection with her workers'-compensation claim. According to

Ms. Freeman, the ALJ erred because she failed to explain what weight she gave Dr. Martin's opinion or to determine whether either doctor was a treating physician.

Ms. Freeman first saw Dr. Martin on February 12, 2007, some nine days after her injury. In a letter to her workers'-compensation attorney, Dr. Martin stated that Ms. Freeman had:

> marked spasm and tenderness over the thoracic and lumbar musculature with extreme tenderness to palpation over the left sacroiliac joint and left mid buttocks. She has limited and very painful range of motion of her lumbar spine with flexion at only 40 degrees, and she exhibits a positive straight leg raising test on the left at 40 degrees, and on the right at 60 degrees in the supine position. . . . The patient appears to have pain and difficulty when getting up and down from the sitting position, as well as on and off the table.

Admin. R. at 179. Dr. Martin further opined that, in all probability, Ms. Freeman had a bulging, as opposed to a herniated disk. He recommended conservative treatment to include physical therapy and medication. If that proved unsuccessful, he planned to obtain an MRI of her lumbar spine and considered referring her to an orthopedic specialist for a consultation. For workers'-compensation purposes, Dr. Martin rated her at "100% temporarily totally disabled" with "[h]er future period of temporary disability [] undetermined." *Id.*

Ms. Freeman saw Dr. Martin again a week later. He reported to her attorney that she was still having "severe pain, limited and painful motion of her

-4-

lumbar spine with evidence of radiculopathy affecting her left hip and lower extremity." *Id.* at 177. Dr. Martin hoped to schedule an MRI for Ms. Freeman to determine whether she had a herniated disk. He again rated her at "100% temporarily totally disabled, and will be for an indefinite period of time." *Id.*

Things had not markedly changed when Dr. Martin saw Ms. Freeman for the last time on June 15, 2007. At that time, Ms. Freeman was attempting to get a CT scan of her lumbar spine through an "Indian Clinic." *Id.* at 175. Dr. Martin refilled her medications and urged her to get the CT scan "to determine the nature of her back injury." *Id.* He again rated her at 100% temporarily totally disabled. Ms. Freeman saw Dr. David Traub once in March 2007. He also rated her as temporarily totally disabled. *Id.* at 173.

In her decision, the ALJ thoroughly summarized the medical evidence including the opinions from Dr. Martin and Dr. Traub. She stated three specific reasons for rejecting them: (1) both doctors "were using a different worker's compensation standard of disability when they opined Ms. Freeman was temporarily totally disabled"[;] *id.* at 286;[1] (2) both doctors had examined Ms. Freeman within a few days or months of her injury and their opinions contrasted with the opinion of Dr. Boyd, who had examined Ms. Freeman

---

[1]     The Social Security Administration "will not consider an acceptable medical source to be [a claimant's] treating source if [a claimant's] relationship with the source is not based on [the] medical need for treatment or evaluation, but solely on [the] need to obtain a report in support of [a] claim for disability." 20 C.F.R. §§ 404.1502, 416.902.

eighteen months after the injury and who did not find her to be disabled; (3) and, finally, the agency was not required to show the workers'-compensation examiners any deference.

It is clear from reading the ALJ's opinion as a whole that she did not consider either Dr. Martin or Dr. Traub to be a treating physician.[2] The ALJ noted the short duration and infrequency of Ms. Freeman's visits with these doctors and that they were contacted as part of her workers'-compensation claim. The ALJ was therefore not required to give any more reasons than she did as to the weight accorded their opinions. To be sure, the regulations require an ALJ to "give good reasons" in a decision as to the weight applied to a treating physician's opinion. 20 C.F.R. § 416.927(d)(2). But to trigger this requirement, Drs. Martin and Traub must in fact have been treating physicians. Because they were not, the ALJ did not have to explain the reasons for the weight she gave their opinions; instead she need only have considered them, which she did. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). The ALJ's analysis of the

---

[2] The regulations define a treating physician as someone

> who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with [a physician] when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).

20 C.F.R. §§ 404.1502, 416.902.

opinions of Dr. Martin and Dr. Traub is supported by substantial evidence. Accordingly, we hold that the ALJ did not err in rejecting those opinions.

Further, the fact that two doctors, retained for workers'–compensation purposes, found Ms. Freeman to be totally temporarily disabled is not a conclusion binding on the ALJ. *See Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993). The determination of disability is solely the province of the commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).

## B. Credibility Determination

Ms. Freeman next argues that the ALJ failed to perform a proper credibility determination. The ALJ found that Ms. Freeman's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [already established] residual functional capacity assessment." Admin. R. at 286. If this were the extent of the ALJ's credibility analysis, we would agree with Ms. Freeman that such boilerplate does not fulfill the ALJ's duty to support credibility findings with substantial evidence. *See Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) ("It is well established that an ALJ's findings with respect to a claimant's credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." (internal quotation marks omitted)).

At the hearing, Ms. Freeman testified that she had problems with her hands and was "dropping stuff." Admin. R. at 20. She also testified that "a gallon of

milk is hard for me to do to lift or carry." *Id.* at 21. Referring to this testimony in her credibility analysis, the ALJ correctly noted that there was no objective medical evidence to support Ms. Freeman's complaints regarding the degree of hand impairment.[3] In addition to noting the paucity of the record, the ALJ cited the opinion of an examining physician, Dr. Boyd, who concluded, after finding her grip strong and equal bilaterally, that Ms. Freeman was able to use her hands for gross and fine manipulation. *Id.* at 225.

The ALJ also stated that she gave great weight to an opinion from Dr. Fiegel, a reviewing physician, who examined Ms. Freeman's MRI results. *See id.* at 233. Dr. Fiegel concluded that Ms. Freeman could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk and sit for six hours in an eight-hour day, and do unlimited pulling or pushing within the lifting restrictions. In explaining how the evidence supported her conclusion, Dr. Fiegel noted that Ms. Freeman is morbidly obese and has "deg[enerative] disease of lumbar by imaging. Has no surgery of spine done or suggested. Complains of knee pain also. Has full motion. Has no nerve–root compression." *Id.* at 235. The reports of both Dr. Boyd and Dr. Fiegel support the ALJ's credibility determination and constitute substantial evidence.

---

[3] In fact, the only medically-related mention of hand problems we could find in the record is Ms. Freeman's report to a physician assistant, in November 2007, of numbness and tingling of both feet and hands at times. Admin. R. at 256.

Ms. Freeman takes exception to Dr. Boyd's conclusions and argues that Dr. Fiegel was wrong to find no nerve-root compression. To the extent Ms. Freeman wants this court to reweigh the evidence or substitute its judgment for that of the commissioner, we are unable to oblige her. *See Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008).

Ms. Freeman's motion for leave to proceed on appeal without prepayment of costs or fees is GRANTED. The judgment of the district court is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge