FILED
United States Court of Appeals
Tenth Circuit

August 19, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DEBRA L. KRUSE,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant-Appellee.

No. 10-5168
(D.C. No. 4:09-CV-00395-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

Debra L. Kruse appeals the Commissioner's denial of benefits, claiming an

Administrative Law Judge (ALJ) erred in considering her medical source

evidence and her credibility.  We exercise jurisdiction under 28 U.S.C. § 1291

and 42 U.S.C. § 405(g) and affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

Ms. Kruse claimed she was disabled by panic disorder, depression, joint disease, and foot edema.  She applied for Supplemental Security Income, but the ALJ concluded she was not disabled at step five of the five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920; *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process).  The ALJ found she had a number of severe impairments—restrictive lung disease, panic disorder, depression, degenerative disc disease at L3-L4, osteoarthritis, and rheumatoid arthritis—but reasoned Ms. Kruse possessed the residual functional capacity (RFC) to perform light work limited by her inability to perform forceful gripping, power torquing, or twisting with her hands.  The ALJ further limited her to simple work that does not require safety operations or hypervigilence and that has only limited public contact.  Relying on the testimony of a vocational expert, the ALJ found that although this RFC precluded Ms. Kruse from returning to her prior work as a cashier, other work existed in significant numbers in the national economy that Ms. Kruse could perform.  He identified three representative occupations:  bench assembler, poultry processor, and electronic assembler.  The Appeals Council denied review, and a magistrate judge, acting on the parties' consent, affirmed.  Ms. Kruse then appealed to this court.

## II. DISCUSSION

We review the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotation omitted). In conducting our review, "[w]e consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence . . . , but we [do] not reweigh the evidence or substitute our judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted).

### A. Medical Source Evidence

Ms. Kruse raises a multitude of points regarding the ALJ's evaluation of the medical source evidence. We begin with her contention that the ALJ erred in his analysis of a treating physician's opinion issued by Dr. Sarah Hall on October 30, 2007. Dr. Hall stated that Ms. Kruse's rheumatoid arthritis "affects the small joints of her hands primarily," causes "daily pain," and precludes "even the simplest activities of daily living . . . . This condition is permanent and will only be controlled with a regimen of medications. She will have difficulty maintaining a job secondary to her chronic pain and inability to use her hands effectively." Aplt. App., Vol. 3 at 437. In evaluating this opinion, the ALJ noted that later records from the clinic where Dr. Hall worked showed that by the end of November 2008, Ms. Kruse had shown improvement due to new medications, and

-3-

that the sole x-ray of her hands, taken in July 2007, showed only "mild arthritic changes." *Id.* Vol. 2 at 21. The ALJ further stated that Dr. Hall's opinion was "not supported by the whole record due to [Ms. Kruse's] improved status," *id.*, and noted that his RFC, which specified no forceful gripping, took account of Ms. Kruse's grip limitations.

Ms. Kruse admits that the ALJ properly did not afford controlling weight to Dr. Hall's opinion. Her primary argument is that Dr. Hall's opinion was entitled to some weight, and the ALJ erred in not explaining what weight he gave to the opinion. We disagree.

A treating physician's medical opinion is subject to a two-step inquiry. First, an ALJ must give such an opinion "controlling weight" if it is "'well-supported by medically acceptable clinical or laboratory diagnostic techniques'" and is not "'inconsistent with the other substantial evidence in the case record.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2); *see also* 20 C.F.R. § 416.927(d)(2) (listing same criteria). If a treating physician's medical opinion is not entitled to "controlling weight, it is still entitled to deference; at the second step of the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the [applicable] regulations," here 20 C.F.R. § 416.927(d)(2).

*Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). We have summarized

those factors as

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or
> testing performed; (3) the degree to which the physician's opinion is
> supported by relevant evidence; (4) consistency between the opinion
> and the record as a whole; (5) whether or not the physician is a
> specialist in the area upon which an opinion is rendered; and
> (6) other factors brought to the ALJ's attention which tend to support
> or contradict the opinion.

*Id.* at 1331 (quotation omitted). When applying these factors, the ALJ's findings

must be "sufficiently specific to make clear to any subsequent reviewers the

weight he gave to the treating source's medical opinion and the reason for that

weight." *Id.* (alteration omitted) (quotation omitted). However, an ALJ need not

explicitly discuss every factor because "not every factor for weighing opinion

evidence will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258

(10th Cir. 2007) (alteration omitted) (quotation omitted).

Although the ALJ did not state a specific weight he attached to Dr. Hall's

opinion, it is readily apparent from the ALJ's rationale—the later improvement in

Ms. Kruse's condition—that he afforded the opinion little weight. As to the first

two *Watkins* factors, the ALJ recognized that Dr. Hall was a treating source and

was well aware of the treatment records generated after Dr. Hall issued her

opinion. As Ms. Kruse points out, those records show continued joint pain,

rheumatoid arthritis, joint warmth or swelling, synovitis of the hand joints,

numbness or decreased sensation of hands, tenderness and limited range of motion, abnormal tissue texture, asymmetry, decreased range of motion, pain of both the hands and feet, observations that her hands and feet were deformed, and decreased grip strength. But ultimately, they do not contradict the evidence that Ms. Kruse's rheumatoid arthritis was improved with medication by November 2008. In addition, an October 2008 note states that her rheumatoid arthritis was "controlled." Aplt. App., Vol. 3 at 485. Moreover, there is no indication that the medication ceased to be effective in alleviating or controlling her rheumatoid arthritis; one later treatment record states her rheumatoid arthritis was improving, *see id.* at 522, and other later records simply note "RA" (short for rheumatoid arthritis) as one impression without further comment, *see id.* at 512, 516, 518. Thus, Ms. Kruse's argument that the fact her rheumatoid arthritis improved on one occasion does not mean it was permanently improved is unsupported by the record.

Further, it is clear the ALJ considered factors three and four under *Watkins* because he found Dr. Hall's opinion was inconsistent with the only x-ray test of Ms. Kruse's hands, which was taken some three months before Dr. Hall issued her opinion and showed "minimal arthritic changes," *id.* at 431. It does not appear factor five has any special relevance here because there is no suggestion Dr. Hall was a specialist. As to factor six of *Watkins*, it appears the

only "other factors" were the later notes showing that Ms. Kruse's rheumatoid arthritis was controlled with medications.

Ms. Kruse raises several other arguments with regard to the ALJ's treatment of Dr. Hall's opinion. In the credibility portion of her opening brief, she relies on the existence of Dr. Hall's opinion to argue it was wrong for the ALJ to state there was no opinion from a treating physician indicating Ms. Kruse was "'disabled or has greater limitations than those determined in this decision.'" Aplt. Opening Br. at 31 (quoting Aplt. App., Vol. 2 at 21). However, the ALJ's statement was based on his negative evaluation of Dr. Hall's opinion. Ms. Kruse further claims the ALJ ignored that Dr. Hall did not write another opinion letter stating that Ms. Kruse's improvement meant she was capable of full time work, but she has provided no authority, nor are we aware of any, requiring a later, contrary opinion in order to afford little weight to a prior opinion. Moreover, Dr. Hall did not say that Ms. Kruse could not work, only that she would "*have difficulty* maintaining a job secondary to her chronic pain and inability to use her hands effectively." Aplt. App., Vol. 3 at 437 (emphasis added). Thus, the statement itself, taken at face value, does not indicate an inability to work.

Ms. Kruse also faults the ALJ for failing to recontact Dr. Hall "to obtain an update on her condition." Aplt. Opening Br. at 22. The duty to contact a medical source arises when "the evidence . . . receive[d] from [a claimant's] treating physician or psychologist or other medical source is inadequate [for]

determin[ing] whether [the claimant] is disabled."  20 C.F.R. § 416.912(e).  There was ample record evidence in this case for the ALJ to use in determining what weight to give Dr. Hall's October 2007 opinion.  Hence, he had no duty to recontact Dr. Hall for an updated report on Ms. Kruse's condition.[1]

Ms. Kruse further contends the ALJ failed to explain how much weight he afforded to the opinion of a consulting examiner, Dr. Tre' Landrum, or to the opinions of non-examining state agency examiners.  She also argues that the ALJ failed to explain why those opinions outweighed Dr. Hall's opinion.  We disagree.

As to Dr. Landrum, the ALJ recounted that his objective examination results stood in contrast to Ms. Kruse's subjective reporting, citing Dr. Landrum's findings that Ms. Kruse had no neurological deficits, normal fine manipulation of objects with her hands, "a stable gait at slow speed," and normal ranges of motion.  Aplt. App., Vol. 2 at 17 (discussing *id.* at 279-83); *see also id.* at 20 (discussing Dr. Landrum's findings as part of credibility discussion).  It is evident the ALJ found the medical evidence consistent with Dr. Landrum's findings and inconsistent with Dr. Hall's opinion.  As detailed in his decision, the objective medical evidence showed "mild degenerative joint disease of the hip,"

---

[1]     We note in passing that, after the ALJ issued his decision, Ms. Kruse submitted to the Appeals Council additional medical records from Dr. Hall's clinic, some of which post-dated the ALJ hearing.  The Appeals Council made those records part of the record on which it based its decision that review was not warranted.

"degenerative disc disease with mild disk space narrowing at L3-4," "minimal arthritic changes in both hands," and "mild to moderate spondylosis deformans and mild disk space narrowing at L3-L4 level." *Id.* at 20.

Ms. Kruse claims the ALJ erred in finding Dr. Landrum did not demonstrate a neurological abnormality because Dr. Landrum noted she had difficulty with heel and toe walking bilaterally. Quoting § 1.00E1 of 20 C.F.R. Part 404, Subpart P, Appendix 1, she says this difficulty "'may be considered evidence of a significant motor loss.'" Aplt. Opening Br. at 24. However, § 1.00E1 states that an "inability" to toe or heel walk, not mere difficulty, "may be considered evidence of a significant motor loss." Thus, we see no error in the ALJ's finding.

Ms. Kruse further posits that Dr. Landrum's finding that her gait was "fairly stable" means it was unstable. She offers no support for this reading of "fairly stable," and we consider it untenable. Along these same lines, Ms. Kruse contends the ALJ erred in failing to address the observation of psychologist David Hansen, a mental consulting examiner tasked with performing a mental status evaluation, that she walked with a slow, shuffling gait. In view of Dr. Landrum's later physical examination findings that Ms. Kruse walked with a fairly stable but slow gait, we see no error in the ALJ's failure to discuss Dr. Hansen's observation, which in any event appears largely consistent with Dr. Landrum's finding.

Regarding the non-examining physician opinions, the ALJ recognized that they "do not as a general matter deserve as much weight as those of examining or treating physicians," but concluded that those opinions "deserve[d] some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions." Aplt. App., Vol. 2 at 21. The non-examining physician who addressed Ms. Kruse's physical limitations concluded that she had the physical RFC for light work, noting that the record indicated she had full range of motion, negative straight-leg raising test, and walked with a "fairly stable gait at an appropriate to slow speed without use of assistive devices." *Id.* at 304-05. The ALJ stated that this opinion was consistent with the medical evidence of record. Ms. Kruse faults the opinion, and the ALJ's reliance on it, because it did not take account of (1) Dr. Landrum's observation that her grip strength and great toe strength were "rated at 4/5," *id.* at 280; (2) an indication that she has decreased tendon reflexes and motor function, *id.*, Vol. 3 at 578; or (3) any manipulative limitations. We see no error. As to Dr. Landrum, the ALJ included a concession to decreased grip strength in his RFC, and Dr. Landrum observed Ms. Kruse walk with a fairly stable but slow gait even with the decreased great toe strength. The indication of decreased tendon reflexes and motor function is described simply as "DTR ↓" and "Motor ↓." *Id.* These findings are summary, lacking any explanation of the degree of limitation, and therefore not significantly probative such that the ALJ was required to address them.

*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Regarding manipulative limitations, Dr. Landrum found none. Ms. Kruse has not pointed us to, nor have we found, any such limitations in the medical records that existed when the non-examining physicians reviewed them in September 2006.[2]

## B.    Credibility Finding

Ms. Kruse also takes issue with the ALJ's finding that she was not credible regarding the extent of her physical limitations.[3] The ALJ based this finding on inconsistency between her activities of daily living (ADLs) and her claimed limitations; the lack of objective medical record support; Dr. Landrum's evaluation; and her non-compliance with physician recommendations that she quit smoking, which the ALJ deemed inconsistent with the claimed severity of her restrictive lung disease.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation

---

[2]    Ms. Kruse also claims the magistrate judge committed several errors in his disposition of her arguments concerning the ALJ's evaluation of the medical evidence. Because we have concluded that the ALJ did not err in this regard, we need not address whether the magistrate judge erred. Additionally, in her reply brief, she raises several new points that are not responsive to the Commissioner's brief. Arguments presented for the first time in a reply brief are waived. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

[3]    Ms. Kruse does not appear to take issue with the ALJ's findings regarding her mental limitations. Accordingly, we will not discuss them.

omitted).  An ALJ's credibility determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Id.* (quotation omitted).

In attacking the ALJ's credibility finding, Ms. Kruse argues that the ALJ improperly relied on her ADLs, did not consider limiting aspects of her ADLs, and failed to state which ADLs he found inconsistent with her claimed limitations.  It is proper for an ALJ to consider ADLs when evaluating credibility, *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004), but minimal ADLs do not constitute "substantial evidence that a claimant does not suffer disabling pain," *id.* at 1221 (quotation omitted).  The ALJ did not solely rely on Ms. Kruse's ADLs, and they were not minimal.  The ALJ noted that she looks after her four young grandchildren three days a week, cleans her house and cooks "easier items" for her grandchildren, Aplt. App., Vol. 2 at 16, "is able to go to stores, restaurants, and movies," *id.* at 19, and "is able to visit family and friends," *id.*  He considered these activities inconsistent with Ms. Kruse's allegations that "she has difficulty handling objects and opening jars, has two hours of stiffness each morning, can stand only five minutes, sit 45 minutes, and walk one-half block," and that "she must be seated to take a shower, and must use a scooter to shop." *Id.*  Thus, it is clear the ALJ considered limiting aspects of her ADLs and stated which ADLs he considered inconsistent with her claimed

limitations. We see no error in the ALJ's consideration of Ms. Kruse's ADLs as one aspect of his credibility finding.

Ms. Kruse next takes issue with the ALJ's observation regarding the lack of objective medical evidence supporting the severity of her claimed limitations. She argues that although diagnostic tests showed "mild degenerative joint disease," "mild disc space narrowing," and "minimal arthritic changes" to her hands, those tests were taken early in her treatment for rheumatoid arthritis, a progressive disease. Apparently in support of the notion that her rheumatoid arthritis worsened into disabling pain, she points to medical records showing that doctors "often prescribed strong pain medications, including . . . narcotic[s]." Aplt. Opening Br. at 29. She also claims it was "improper to expect the objective medical evidence to demonstrate the severity of her symptoms because only a loose nexus is required" under *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987), and she implies the ALJ's adverse credibility finding was based solely on the lack of corroborating objective medical evidence.

We see no merit in these arguments. First, the ALJ did not solely rely on the lack of corroborating objective medical evidence. Second, even though only a loose nexus between pain complaints and an impairment is required under *Luna* to trigger the duty to conduct a credibility analysis regarding pain, *see id.,* inconsistency between the objective medical evidence and nonmedical testimony is a proper consideration in the credibility analysis, *Kepler*, 68 F.3d at 391.

-13-

Third, as the ALJ made clear in evaluating Dr. Hall's opinion, Ms. Kruse's rheumatoid arthritis was later reported to be improved (and even controlled) with medications. Accordingly, we see no error in the ALJ's consideration of the lack of objective medical evidence supporting Ms. Kruse's subjective allegations of disabling pain.

Ms. Kruse also argues the ALJ "miscasts the evidence of record" in finding her "foot edema to be nonsevere because he could find no laboratory signs of foot edema." Aplt. Opening Br. at 32-33. She then cites to numerous medical records documenting foot edema. Overlooking that this argument has a tenuous relationship to the ALJ's credibility finding, it is based on an incomplete reading of the ALJ's finding regarding her foot edema. The ALJ stated that "[a] review of the record does not reveal any laboratory signs, symptoms or laboratory findings of an impairment which would impose more than a minimal limitation on the claimant's ability to perform basic work activities and therefore her foot edema is considered a non-severe impairment." Aplt. App., Vol. 2 at 12.

Ms. Kruse further claims the ALJ was biased against her, as evidenced by the "harangue" he subjected her to at the hearing with regard to her failure to quit smoking. Aplt. Opening Br. at 30. She also claims the ALJ "implied that [she] was somehow not credible or was negligent in continuing to smoke, but never supported his statements with substantial evidence." *Id.* We are not persuaded. At the hearing, the ALJ pressed Ms. Kruse about why she continued to smoke

despite her doctors' repeated recommendations that she quit. In his decision, he relied on her failure to follow her physicians' recommendations for the limited purpose of finding that her behavior was inconsistent with her allegations regarding the severity of her restrictive lung disease. We decline to read into the ALJ's written finding an implied statement that Ms. Kruse's continued smoking rendered her less credible with regard to her subjective allegations of pain or that she was "negligent" in her conduct. Thus, we conclude she has not demonstrated the ALJ was biased against her because of her smoking.

Ms. Kruse also complains about the ALJ's use of boilerplate language regarding her credibility. However, boilerplate language is insufficient to support a credibility determination only "in the absence of a more thorough analysis." *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). As we have detailed, the ALJ provided a thorough analysis affirmatively linked to substantial evidence.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge