**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

XIANGYUAN SUE ZHU,

Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

Defendant - Appellee.

No. 20-3180
(D.C. No. 5:19-CV-04066-JWB)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Dr. Xiangyuan Sue Zhu appeals pro se from a district court order that affirmed the Commissioner's denial of her applications for disability insurance benefits (DIB) and supplemental social-security income (SSI). Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Dr. Zhu has a Ph.D. in economics. She has worked as an economics professor, a business analyst, and a business manager.

While visiting China in October 2017, Dr. Zhu sought treatment for recurring abdominal pain. Doctors discovered a bowel obstruction that necessitated partial removal of her colon and dissection of a lymph node. Pathology reports indicated the presence of stage III adenocarcinoma. Zhu was hospitalized for nearly three weeks. Upon returning to the United States in November, she applied for DIB and SSI, claiming disability as of August 2017, at the age of sixty-three.

Dr. Zhu consulted with Dr. Weijing Sun, an oncologist. He noted there was "[n]o evidence of metastatic disease," that "she ha[d] recovered well from surgery," and that the tumor's edges were negative for cancer cells. R., Vol. I at 618, 620. He recommended she undergo chemotherapy and "genetic counseling and . . . testing for germline mismatch repair deficiency," *id.* at 619, which is "a well-established feature for Lynch syndrome," Y. Yuan et al., *Germline Mutations in Chinese Colorectal Cancer Patients with Mismatch Repair Deficiency*, 29 Annals of Oncology 199 (Supp. 8 Oct. 1, 2018). Lynch syndrome, also known as "hereditary nonpolyposis colorectal cancer," is a genetic "predisposition to early-onset colorectal cancer." *Hereditary Nonpolyposis Colorectal Cancer*, Steadman's Medical Dictionary (2014).

Dr. Zhu began chemotherapy in December 2017. Dr. Muhammad Salamat oversaw her treatment. He noted that she experienced chemotherapy-related side effects,

including "mild fatigue, mild diarrhea, and temporary neuropathic symptoms." R., Vol. I at 679.

In the spring of 2018, Dr. Zhu was still undergoing chemotherapy. In March, Dr. Sun reported that she was "[d]oing reasonabl[y] well" and that new CT scans "show[ed] no evidence of metastatic disease." *Id.* at 710. In regard to her neuropathy, he noted that her fingertips were numb, but it did "not interfere with function or cause too much pain." *Id.* at 708. He filled out a medical-source statement in support of her DIB and SSI claims, indicating various physical limitations and opining that she would miss work or have to go home early more than four days each month. In April, Dr. Salamat saw Dr. Zhu and reported she was "[o]verall . . . doing well." *Id.* at 844. But he opined in a medical-source statement that she could stand no more than two minutes at a time, not lift anything, and was "[n]ot able to work at this time." *id.* at 741.

Two state-agency physicians reviewed Dr. Zhu's medical records. Dr. Gary Coleman reviewed her records through February 2018 and concluded she could perform light work with postural and environmental limitations. Dr. George Liesmann reviewed her records through June 2018 and reached the same conclusion.

Dr. Zhu finished her chemotherapy in July 2018. A subsequent colonoscopy showed "no pre-cancerous polyps." *Id.* at 813. Dr. Zhu reported to Dr. Sun in late September 2018 that she was "feeling well with no new complaints" and "[h]er bowels [were] working." *Id.* at 802. Dr. Sun observed that her neuropathy was "[g]etting better" and he referred her to genetic counseling. *Id.* at 806. Dr. Zhu reported to Dr. Salamat in October 2018 that her neuropathy had improved in her hand but not her feet, and she

3

denied experiencing diarrhea. *Id.* at 876-77. Dr. Salamat reported that she had "tolerated [chemotherapy] well except [for] mild fatigue, mild diarrhea and temporary neuropathic symptoms from oxaliplatin" (a medication used to treat colorectal cancer). *Id.* at 879. He recommended a re-check in three months.

In December 2018, Dr. Zhu appeared with counsel before an ALJ for her disability hearing. She testified there had been no recurrence of her cancer, but she had fatigue and neuropathy in one finger and her toes. She also complained of arthritis in her right knee, hypothyroidism, osteoporosis, scoliosis, and diarrhea with three or four instances of incontinence. In regard to her physical capabilities, she said she could stand or walk for five to ten minutes; sit for up to an hour; and lift "a pair of shoes" or a gallon of milk (if she used two hands), *id.* at 228. Nevertheless, she indicated she could bathe, dress, feed herself, drive a car, and shop for groceries.

A vocational expert (VE) testified that a hypothetical person of Dr. Zhu's age, education and work experience could perform her prior jobs if that person could (1) do light work[1] in a temperature-controlled environment not involving unprotected heights, excessive vibrations, and hazardous machinery; (2) occasionally climb stairs and ramps, but not ropes, ladders or scaffolds; and (3) occasionally balance, stoop, kneel, crouch, and crawl. But the VE testified that no prior work could be performed if that person (1) was

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); *id.* § 416.967(b).

limited to sedentary work;[2] (2) could never climb, kneel, crouch, or crawl; and

(3) experienced unscheduled work disruptions due to lengthy bathroom breaks,

significant rest periods, concentration difficulties, and chemotherapy-related symptoms.

On February 4, 2019, the ALJ determined that Dr. Zhu was not disabled.[3]  Doing

so, he identified as severe impairments her history of colon cancer, neuropathy, and

osteoarthritis.  He found that no impairment, either singularly or in combination, met or

medically equaled any impairment in the Listings.  Next, he assigned her a residual

functional capacity (RFC) that tracked the first hypothetical given to the VE.  He

proffered three reasons for rejecting a more restrictive RFC:  Dr. Zhu's alleged

limitations were not entirely consistent with the evidence; the medical-source statements

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files," and occasionally walking and standing.  20 C.F.R. § 404.1567(a); *id.* § 416.967(a).

[3] The ALJ follows a five-step sequential evaluation process:

> Step one requires the claimant to demonstrate that [s]he is not presently engaged in substantial gainful activity.  At step two, the claimant must show that [s]he has a medically severe impairment or combination of impairments.  At step three, if a claimant can show that the impairment is equivalent to a listed impairment, [s]he is presumed to be disabled and entitled to benefits.  If a claimant cannot meet a listing at step three, [s]he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents h[er] from performing h[er] past work.

> If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given her age, education, and work experience.

*Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks omitted).

of Drs. Sun and Salamat were not supported by the record or Dr. Zhu's testimony; and the non-examining state medical consultants said Dr. Zhu could perform a reduced range of light work, "consistent with physical examination findings that show[ed] few abnormalities in her functioning," R., Vol. I at 19. Finally, the ALJ cited the VE's testimony and concluded Dr. Zhu could work in her prior occupations.

Dr. Zhu sought review pro se in the Appeals Council, submitting various medical articles and more medical records, including an October 2018 lab report showing she has a gene variant associated with Lynch syndrome. The Appeals Council denied review. As for her additional evidence, the Appeals Council rejected it because she failed to "show a reasonable probability that it would change the outcome of the [ALJ's] decision," or the evidence did "not relate to the period at issue" and therefore would "not affect the [ALJ's] decision about whether [she] w[as] disabled beginning on or before February 4, 2019." *Id.* at 41.

Dr. Zhu filed suit pro se in federal district court. The court upheld the ALJ's decision, prompting this appeal.

## DISCUSSION
### I. Standards of Review

"We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007) (internal

quotation marks omitted).  "[T]he threshold for such evidentiary sufficiency is not high,"

but it is "more than a mere scintilla."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(internal quotation marks omitted).

Because Dr. Zhu is pro se, we construe her filings liberally, but we do not act as

her advocate.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th

Cir. 2005).

## II.  Medically Severe Impairments

Dr. Zhu argues the ALJ erred by not designating her Lynch syndrome, shingles,

and bowel dysfunction as severe impairments.  We disagree for two reasons.

First, "the failure to find a particular impairment severe at step two is not

reversible error whe[re]," as here, the ALJ found "that at least one other impairment is

severe."  *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

Second, the record does not support designating Dr. Zhu's proffered impairments

as severe.  "An impairment is severe if it significantly limits a claimant's physical or

mental ability to do basic work activities."  *Id.* (brackets and internal quotation marks

omitted).  Regarding Lynch syndrome, the diagnosis of that genetic disorder was not

presented to the ALJ even though it was available at the time of the hearing.  But the ALJ

had Dr. Sun's November 2017 report in which he contemplated a genetic origin for her

tumor.  Dr. Zhu does not, however, identify any record evidence that such a genetic

predisposition to developing cancer somehow limits her ability to do basic work

7

activities. A claimant cannot base a step-two error on "the mere presence of a condition." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).[4]

Regarding shingles, the ALJ observed that Dr. Zhu had undergone treatment for that condition and that it had no more than a minimal impact on her ability to perform basic work functions. Dr. Zhu identifies no contrary record evidence. *See id.* (observing that a step-two claimant has the burden of "show[ing] that h[er] impairments would have more than a minimal effect on h[er] ability to do basic work activities" (internal quotation marks omitted)).

Finally, regarding bowel dysfunction, the ALJ acknowledged Dr. Zhu's testimony about "residual issues of diarrhea," R., Vol. I at 14-15, but he determined that recent medical records were not supportive, *see, e.g., id.* at 802 ("Her bowels are working"), 877 ("No diarrhea"), 883 ("Negative for . . . diarrhea").[5] Dr. Zhu has not shown that any

---

[4] To the extent Dr. Zhu argues the Appeals Council erred by rejecting her additional evidence, which included her Lynch syndrome diagnosis and other matters, we do not reach that argument. In the district court, Dr. Zhu did not raise until her reply brief the Appeals Council's treatment of her additional evidence. And the district court limited its review to the ALJ's decision. Thus, Dr. Zhu has forfeited any argument that the Appeals Council erred in rejecting her additional evidence in its review of the ALJ's decision. *See Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019) ("When a litigant fails to raise an issue below in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review." (brackets and internal quotation marks omitted)). And because Dr. Zhu has not asserted that her argument could withstand plain-error review, the argument is waived on appeal. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011). Dr. Zhu's additional evidence therefore "plays no role in [our] judicial review." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).

[5] Dr. Zhu appears to contend her problems with diarrhea are distinct from bowel dysfunction or "bowel incontinence accidents," R., Vol. I at 15. But she provides no record support for such a distinction. The ALJ considered both her

8

bowel dysfunction persisted beyond her chemotherapy. *See* 42 U.S.C. § 1382c(a)(3)(D) (providing that a claimant must demonstrate she has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques").

Substantial evidence supports the ALJ's decision limiting Dr. Zhu's medically severe impairments to a history of colon cancer, neuropathy, and osteoarthritis.

### III. Listings

Dr. Zhu argues the ALJ erred in concluding that her colon cancer did not meet Listing 13.18(A). That listing requires "[a]denocarcinoma that is inoperable, unresectable, or recurrent." 20 C.F.R. pt. 404, subpt. P, app. 1, § 13.18(A). The ALJ could find no evidence meeting those requirements. Indeed, the ALJ noted that Dr. Zhu "underwent a right hemicolectomy for colon carcinoma," followed by chemotherapy and CT scans that were "consistently . . . negative for recurrent or metastatic disease." R., Vol. I at 205. The ALJ did not err.

Dr. Zhu's cancer was clearly not inoperable. *See* 20 C.F.R. § pt. 404, subpt. P, app. 1, § 13.00(I)(2) ("Inoperable means surgery is thought to be of no therapeutic value or the surgery cannot be performed[.]"). Nor was her cancer unresectable, as Dr. Zhu's doctors completely removed her tumor and put her on a course of chemotherapy. *See id.* § 13.00(I)(8) (stating that "[u]nresectable means surgery . . . did not completely remove

---

diarrhea and the three or four incidents in which she was unable "to get to the bathroom in time," *id.* at 230, and he correctly noted "she ha[d] denied diarrhea issues in recent follow-up examinations," *id.* at 15.

the cancer" and "does not include situations in which the cancer is completely resected but [the claimant receives] . . . chemotherapy . . . to eliminate any remaining cancer cells or lessen the chance of recurrence"). And Dr. Zhu's cancer was not recurrent, as CT scans showed no evidence of cancer. *See id.* § 13.00(I)(7) ("Recurrent . . . means the cancer that was . . . entirely removed by surgery *has returned*." (emphasis added)).

Nevertheless, Dr. Zhu argues that the ALJ failed to consider the genetic origin of her cancer and her postoperative bowel dysfunction. But she cites no evidence that either her genetics or bowel dysfunction has any bearing on whether her tumor was inoperable, unresectable, or recurrent within the meaning of Listing 13.18(A). *See Fischer-Ross*, 431 F.3d at 733 (emphasizing claimant's "step three burden to present evidence establishing her impairments meet or equal listed impairments").[6]

Substantial evidence supports the ALJ's determination that Dr. Zhu's impairments do not meet or medically equal any impairment in the Listings.

### IV. Symptom Evaluation

Dr. Zhu argues the ALJ erred by finding that her statements describing the limiting effects of her symptoms were not entirely consistent with the record. We disagree.

---

[6] Dr. Zhu also claims that she suffers from an "immune deficiency disorder called [L]ynch syndrome." Aplt. Opening Br. at 22. She offers no support, however, for characterizing her genetic predisposition to colorectal cancer as an immune deficiency disorder. *See* 20 C.F.R. § pt. 404, subpt. P, app. 1, § 14.00(A)(3) (stating that an immune deficiency disorder is "characterized by recurrent or unusual infections that respond poorly to treatment, and are often associated with complications affecting other parts of the body").

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (internal quotation marks omitted).[7] We will uphold the ALJ's findings as long as they are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.*

The ALJ reviewed Dr. Zhu's medical records and found few documented functional impairments beyond those caused by her surgery and chemotherapy, which he observed had resolved, with the exception of some residual neuropathy. He also observed that during Dr. Zhu's medical appointments, she generally exhibited normal strength, range of motion, and no neurological deficits. Regarding Dr. Zhu's daily activities, the ALJ determined they were inconsistent with a person having significant physical limitations. Finally, the ALJ noted that Dr. Zhu's claimed functional limitations for standing, walking, and lifting were less severe than Dr. Salamat had opined, and that Dr. Zhu's neuropathy showed documented improvement after chemotherapy and did not align with Dr. Sun's medical-source statement.

We conclude that substantial evidence supports the ALJ's evaluation of Dr. Zhu's symptoms and that he applied the correct legal standards. *See Qualls v. Apfel*, 206 F.3d

---

[7] The agency no longer uses the term "credibility" and has clarified that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). But the agency has not altered the fundamental rule applicable here, that "if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [an ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* at *8.

1368, 1372 (10th Cir. 2000) (upholding the ALJ's credibility determination where he "did not simply recite the general factors he considered" and instead "stated what specific evidence he relied on"); SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) (stating that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms").

## V. Medical Opinions

Dr. Zhu argues the ALJ erred by rejecting her oncologists' opinions about her functional limitations. We discern no error.

Under the revised regulations applicable here,[8] the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *id.* § 416.920c(a). Rather, the ALJ considers the persuasiveness of those opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." *Id.* § 404.1520c(c); *id.* § 416.920c(c).

The most important factors are supportability and consistency. *Id.* § 404.1520c(a); *id.* § 416.920c(a). "Supportability" examines how closely connected a medical opinion is

---

[8] The regulations governing the agency's evaluation of medical evidence were revised effective March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017), *as amended in* 82 Fed. Reg. 15132 (Mar. 27, 2017).

to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1); *id.* § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2); *id.* § 416.920c(c)(2).[9]

The ALJ complied with this regulatory framework and his evaluations of the pertinent medical opinions are supported by substantial evidence. In particular, the ALJ determined that Dr. Sun's and Dr. Salamat's opinions—which were provided while Dr. Zhu was in the midst of chemotherapy—were inconsistent with clinical findings showing that she experienced few functional deficits, her testimony describing her daily activities and capabilities, and her post-chemotherapy statements showing improving symptoms. Further, the ALJ considered the medical consultants' opinions and found they were supported by detailed evidentiary narratives and were consistent with the medical record and Dr. Zhu's testimony. For instance, Dr. Liesmann reviewed Dr. Zhu's medical records in late June 2018, right before the end of her chemotherapy, and noted that (1) a

---

[9] An ALJ must consider, but is not required to explicitly discuss, factors three through five (relationship with the claimant, specialization, and other factors) unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. *See* 20 C.F.R. § 404.1520c(b)(2), (3); *id.* § 416.920c(b)(2), (3).

recent comprehensive physical exam was "essentially normal"; (2) Dr. Salamat had

reported that Dr. Zhu was tolerating chemotherapy well except for mild diarrhea, mild

fatigue and temporary neuropathy; (3) any "post surgical restrictions would have been

lifted by now"; and (4) Dr. Zhu's symptoms would likely "continue to improve" and "at

duration, they w[ould] likely be much abated[,] . . . consistent with the usual course of"

chemotherapy following tumor removal.  R., Vol. I at 282.

Thus, the ALJ found the consultants' opinions persuasive, and he adopted their

conclusions that Dr. Zhu could perform a reduced range of light work.  Dr. Zhu has not

shown the ALJ erred.

### VI.  VE's Testimony

Dr. Zhu argues the ALJ should have accepted the VE's testimony that a

hypothetical claimant limited to sedentary work and who experienced unscheduled work

disruptions could not perform any of her prior jobs.  But "[t]he ALJ was not required to

accept the answer to a hypothetical question that included limitations claimed by

[Dr. Zhu] but not accepted by the ALJ as supported by the record."  *Bean v. Chater*, 77

F.3d 1210, 1214 (10th Cir. 1995).

### CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge


14